MONTGOMERY COUNTY *v.* CEARLEY.

4-4393 and 4397

Opinion delivered June 15, 1936.

*Osro Cobb,* for appellant.
*Jerry Witt* and *Trieber & Pope,* for appellees.

BUTLER, J. Certain landowners appealed to the circuit court of Montgomery county from an order of the county court assessing their damages for land taken in the widening of a highway and incident injuries suffered in the construction of same across their lands. On the evidence adduced and instructions of the trial court, the cases were submitted to a jury which returned verdicts in favor of each of the landowners in excess of the sums allowed by the county court. The circuit court accordingly entered judgment for each of the landowners in sums fixed by the jury, and adjudged that they recover the same out of the "turn-back fund" due or to become due to Montgomery county. From that judgment comes this appeal.

1. It is first insisted that the case should be reversed for the refusal of the trial court to permit appellant to prove the assessed valuation of the lands over which the highway runs involved in the several actions brought by the landowners. The competency of the alleged offered testimony is based upon § 1 of act No. 205 of the Acts of 1929, which is as follows:

"All courts and juries in case of condemnation of land for right-of-way for State highways shall take into consideration the fact that lands are required to be assessed at fifty per cent. of their true value, and shall also take into consideration the fact that owners of automobiles and trucks living miles off of a State highway pay the same gas tax and auto license tax as those being fortunate enough to own land adjoining the State highway, and any court or jury considering claims for right-of-way damages shall deduct from the value of any land taken for a right-of-way the benefits of said highway to the remaining lands of the owner."

On suggestion of the appellees that no evidence was offered at the trial to establish the assessed values of the lands, we have carefully examined the bill of exceptions and find that there was, in fact, no evidence offered to support the contention of the appellant in this particular. We fail to discover where the custodian of the assessment rolls was called and where such rolls were offered in evidence. The nearest approach to the ques-

tion of the assessed value of lands came in the cross-examination of one of the appellees who was asked what he had assessed his lands for and he replied that he didn't remember. The trial court, in that connection, remarked that the question sought to elicit incompetent evidence. No objection was interposed to the ruling of the court, and no further inquiry was made at any other time or in any other manner during the trial of the case. Whether the court was correct or not in its ruling is of no consequence; first, because the appellant was not prejudiced for the reason that the witness did not know the assessed valuation of the lands, and second, that no objections were made or exceptions preserved.

2. The next ground urged for reversal is that the case was submitted to a jury of less than twelve qualified jurors, and that the verdict was signed by the foreman only. There is no merit in this contention, because the record reflects that the submission to a jury of less than twelve was by consent, and the presumption is that where a verdict is signed only by the foreman it is the verdict of all the jurors. Provision is made by § 1299 of Crawford & Moses' Digest for the removal of any doubt as to the unanimity of the verdict by the requiring, on the request of either party, a poll of the jury. If any juror disagrees, provision is made (§ 1300, ib.) for further deliberation by the jury, and, when neither party requires the jury to be polled, the verdict is complete and final. If, on a poll of the jury, it appeared that the verdict was not the verdict of all the jurors, then Amendment No. 16 to art. 2, § 7 of the Constitution, invoked by the appellant, would be applicable and the jurors consenting to the verdict, where they were less than twelve, would be required to sign their names. The record reflects that no request for a poll was made, and it must be presumed that the verdict was unanimous and the signatures of the jurors, therefore, were not required. *Browne* v. *Dugan,* 189 Ark. 551, 74 S. W. (2d) 640.

3 and 4. It is contended that the evidence is not legally sufficient to support the verdict, and, if there was legal evidence the verdict is excessive. These conten-

tions are based to a large extent on the contention that improper evidence was permitted to go to the jury and that the court failed to give proper instructions as to the measure of damages.

It is insisted also that the testimony of the appellees and their witnesses as to the acreage actually taken in the construction and widening of the highway is demonstrably false, and we are asked to take judicial notice of the accuracy of certain calculations submitted by counsel for appellant. On this proposition all that need be said is that plats were introduced in evidence, appellees and their witnesses testified regarding the acreage actually taken, and appellant did not see fit on the trial of the case to dispute this testimony. The estimates made by the witnesses may have been inaccurate, but it was certainly appellant's duty to disclose this at the trial of the case. It is too late to bring this first into question on appeal. Likewise, as to the evidence complained of and the instructions given by the court, on the trial no objection was made or exceptions saved to any of these questions. These observations dispose of all the questions presented except the sufficiency of the testimony. It requires the citation of no authority to support this view, for it is a rule well settled by the text writers and decisions of the courts of almost universal application, that questions, of whatever nature, not raised and properly preserved for review in the trial court, cannot be considered on appeal.

Appellant concedes this rule, but advances the novel theory that it has no application in suits where counties are parties litigant, particularly where a county is acting to enforce a public right or protect a public interest. In support of this contention we are cited to the case of *Gordon* v. *Camden Curb & Gutter District,* 172 Ark. 94, 287 S. W. 761. We have carefully examined this case and find that it contains no reference to the rule we have stated. The other cases cited simply announce the well-established principle that the sovereign, proceeding to enforce a public right or to assert a public interest, is not precluded by any laches of its officers or bound by any statute of limitations, unless it has clearly manifested

its intention to be so bound. *United States* v. *Mack,* 295 U. S. 48, 55 S. Ct. 813, 79 L. Ed. 1559, Annotation 61 A. L. R. 412; *Gordon* v. *Camden Curb & Gutter District, supra; Cooke* v. *United States,* 91 U. S. 389; 23 L. Ed. 237; *Reinecke* v. *General Combustion Company,* 237 Ill. App. 404. This principle is not involved in the instant proceeding, but here the county appears as a party litigant and is bound by the same rules of practice as any one else. The same rules of evidence obtain, the same methods are provided by which it may advise the court of an objection to any ruling or declaration of law, and the same methods for the preservation of those objections so they may be presented to the appellate court for review.

There were six different proceedings by as many land owners which were consolidated by the court for purposes of trial, and, in the absence of objections to the testimony and the instructions given, we think the evidence sufficient to support the award of damages fixed by the trial courts. The springs which supplied some of the farms with water were destroyed or greatly injured, and this appears to have been a necessary consequence to the construction of the highway no matter how carefully the work was done; at least, there is no testimony to the contrary. The highway divided some of the farms into small patches making cultivation extremely difficult; standing timber and fruit trees were destroyed; fences of some of the claimants were destroyed and the farms and homes generally, injured for the purposes for which they were used or intended to be used. Taking all these elements into consideration, we think the evidence is sufficient to show the damage to the market value of the properties in the sums fixed by the jury.

It is lastly insisted that the judgment ordering payment of the awards for damages out of the county turnback fund is an unlawful diversion of said fund in that it gives priority to the judgments of the appellees over warrants previously issued against the fund and registered with the county treasurer.

A sufficient answer to this contention is that it is made for the first time in this court. No objection was

made nor exception saved to this part of the judgment of the trial court nor was it preserved in the motion for a new trial. Subsequently, on a petition for writ of mandamus, the court found in effect that an allotment of approximately $1,200 had been made by the State Highway Department to Montgomery county as the "turn-back fund" and that said sum would soon be paid to its treasurer. The court further found that the warrants previously issued on the "turn-back fund" were based on claims for supplies, materials and labor, and that none of said warrants were for claims for right-of-way on any State highway project in Montgomery county. The court further declared that the judgments in favor of the appellees constituted a prior lien on the "turn-back fund," and as such had preference and priority over other claims of a contractual nature. No motion for a new trial was filed, no objection to this last order of the court was preserved, and, therefore, neither order of the court relating to the fund out of which payment of the judgments should be made can be reviewed by this court.

It follows that the judgments must be affirmed, and it is so ordered.