BRIDGMAN *v.* BAXTER COUNTY.

4-6247                                                148 S. W. 2d 673

Opinion delivered March 17, 1941.

*H. J. Denton* and *O. E. Ellis,* for appellant.

*Bob Wood* and *Claude Cowart,* for appellee.

SMITH, J. On August 30, 1938, the county court of Baxter county, upon the petition of the State Highway Commission, made an order changing the route of highway No. 62 through the town of Cotter, which involved the condemnation of portions of lots belonging to residents of that town. Thirteen of these landowners filed claims for damages with the county court, all of which were disallowed, and from these orders of the county court appeals were prosecuted to the circuit court, where all cases were consolidated and tried together. During the course of the trial, four of the claimants took nonsuits. Separate verdicts were returned in each of the other nine cases, all in favor of the county, and from the judgment pronounced thereon is this appeal. In the case of Mrs. M. O. White the verdict was set aside, and this appeal involves the claims of the remaining eight claimants.

Highway No. 62 ran through the town before the institution of the condemnation proceedings, and the property owners insist that they received no new or special benefits from the re-location, reconstruction and blacktopping of the new road. The old road was a gravel road. The new road is wider, and reduced certain curves in the old one.

The case was submitted to the jury under instructions conforming to the law as declared in the recent case of *Herndon* v. *Pulaski County,* 196 Ark. 284, 117 S. W. 2d 1051, and the cases there cited.

Testimony was offered showing the parts and per cent. of each lot of which portions had been condemned, and a plat was offered in evidence showing the shape of the lots after these portions had been condemned. It was proposed, after some testimony had been taken, that the jury should view the route of the new road, and it was agreed that this should be done. Thereupon, the presiding judge said: "In view of the fact that the

defendant desires a view of the different properties involved in this case, and the plaintiffs do not object, . . . it will be well, from this point on, to introduce your testimony, . . . , on the theory that there will be a view of each separate property involved, by the jury.'' This was on the first day of the trial, and on the next day, before the trial was resumed, separate written objections were filed by all the plaintiffs to a view of the property by the jury.

Section 1518, Pope's Digest, provides that ''Whenever, in the opinion of the court, it is proper for the jury to have a view of real property which is the subject of litigation, or of the place in which any material fact occurred, it may order them to be conducted in a body, under the charge of an officer, to the place, which shall be shown to them by some person appointed by the court for that purpose. While the jury are thus absent, no person other than the person so appointed shall speak to them on any subject connected with the trial.''

It was, therefore, within the discretion of the trial judge to permit the view, even though both parties had not at first consented, and this would be true even though one of the parties had not consented, but had objected. The court, no doubt, was of the opinion that the situation could be better visualized and comprehended by a view than by testimony based upon maps which were offered in evidence. We conclude, therefore, that the court did not abuse its discretion in this respect. It is not insisted that the jury was subjected to any improper influence, or that the view was not had under the directions of the court in conformity to the section of the statute above copied.

In making up the jury, the court excluded members of the regular panel who stated that they had personal knowledge of the location of the old road and the relocation of the other, and the jury was made up of members of the regular panel who said they had no personal knowledge of the situation. It was not essential that this be done if the excused jurors were unbiased and otherwise qualified. We think this, too, was a matter within the discretion of the trial judge. It was evidently the pur-

pose of the trial judge to have a jury composed of members without predilections on the subject, and no attempt was made to show that any member of the jury finally selected to try the case entertained any bias for or any prejudice against either side, or lacked any of the qualifications required by law. It has many times been said that the litigant is not entitled to the services of any particular juror, and this has been said in both civil and criminal cases.

The claimants testified and offered other testimony as to the value of their property both prior and subsequent to the condemnation, and they offered testimony as to the nature and extent of their various recoverable elements of damage, all of which were covered in appropriate and correct instructions.

The court gave an elaborate charge, consisting of fourteen separate instructions, which were all the instructions requested except Nos. 2 and 6, requested by the plaintiffs. These latter might well have been given except for the fact that they were covered by other instructions which were given.

The court charged the jury as to the recoverable elements of damage, after which the instructions were summarized by an instruction numbered 9, which conforms to § 6962, Pope's Digest, which provides, in part, that ". . . and any court or jury considering claims for right-of-way damages shall deduct from the value of any land taken for a right-of-way the benefits of said state highway to the remaining lands of the owner," and to the construction thereof in the Herndon case, *supra*. See, also, *Cate* v. *Crawford County*, 176 Ark. 873, 4 S. W. 2d 516.

Five real estate men testified as to values, damages and benefits, four for the defendant and one for the plaintiffs, the latter being himself a claimant and an interested party. We do not attempt to reconcile the conflicting opinions of these witnesses, as this was a question for the jury.

The weight to be given the testimony of any one of the witnesses who expressed opinions would depend, of

course, on the candor, intelligence, experience and knowledge of values on the part of the witness. It was said in the case of *Fort Smith & Van Buren Bridge District* v. *Scott,* 103 Ark. 405, 147 S. W. 440, that values will usually be established by the opinions of witnesses who are familiar with the property, this being one of the recognized exceptions to the general rule that witnesses are required to state facts, and not express opinions. It was said also in the case just cited that the question as to who is competent to express an opinion upon the value of land is largely a question within the discretion of the trial court. We find no abuse of that discretion in this case.

Suffice it to say that the testimony on the part of the defendant was to the effect that the enhanced value of the remaining portions of the lots exceeded the damages, and that the enhanced value resulted from the facts that the road had been widened and that the property owners had been freed and relieved from the dust incident to the traffic over the old gravel road.

It is insisted that this is not a special and peculiar benefit enjoyed by the claimants, but is a benefit enjoyed by all others whose property is adjacent to the new road, and that for this reason it was improper to take it into account. A similar contention was made in the Herndon case, *supra,* but it was there said: ''The insistence is that there were no benefits which were local, peculiar and special to plaintiff's lands, but that such benefits as were derived from the new road were common to and were generally shared by other lands in the vicinity. This was, of course, a question of fact. It was shown to be true that other owners, no portion of whose lands had been taken for the new road, received the same benefits which plaintiff derived; but this does not prove that plaintiff has not received special benefits to her lands. The fact that other owners have received special benefits without loss of land or other cost to them does not prove that plaintiff has not received special benefits. The other beneficiaries of the change of location of the road are not asking damages. If they were asking and had prayed damages it would then, in that event, be

proper to offset their special benefits against their damages.''

Certain other questions are raised in the briefs which we do not think require discussion here.

Upon the whole case, we find no error, and the judgment must be affirmed, and it is so ordered.

MEHAFFY, J., dissents.