CITY OF HARRISON *v.* MOSS.

4-8597                                   212 S. W. 2d 334

Opinion delivered June 21, 1948.

*Roy L. Baker, Jr.,* for appellant.

*Shouse & Shouse,* for appellee.

Minor W. Millwee, Justice. Appellant, City of Harrison, brought this action in circuit court to condemn 21.13 acres of land belonging to appellees, Ralph Moss and wife, Pearl Moss, for use in the expansion of a municipal airport located about three miles northwest of the city.

Appellant proceeded in the exercise of its right of eminent domain under §§ 10037 and 10038 of Pope's Digest, as amended by Acts 18 and 39 of 1945. A jury empaneled to assess the damages returned a verdict in appellees' favor of $8,000. The only question argued for reversal of the judgment rendered on the jury's verdict is the sufficiency of the evidence to support the verdict, which appellant contends is grossly excessive.

Appellees own 124 acres which is fenced and used as a pasture for livestock. Eighty acres of the 124-acre tract comprise two 40-acre tracts running north and south and lying west of and adjacent to the present airport. The tract condemned by appellant divides this 80-acre tract near the middle leaving 28 acres north of the condemned strip isolated from the remaining 31 acres south of the strip. An additional 44 acres joins the 31-acre tract on the southwest corner. The 21.13 acres condemned is level land while the remainder is rolling and hilly and not as adaptable to the growth of grass for pasture as the condemned land. The 124-acre tract is at its nearest point a quarter of a mile from U. S. Highways 65 and 62.

Section 10038 of Pope's Digest, as amended by Act 39 of 1945, provides that the procedure for the exercise of the right of eminent domain by municipalities in condemnation of lands for airports shall be that prescribed by law for the exercise of such power by railroads. In *Malvern & Ouachita River Railroad Co.* v. *Smith,* 181 Ark. 626, 26 S. W. 2d 1107, appellee's farm was divided into two parts by condemnation proceedings for a railroad right-of-way. Appellee testified that he had been damaged to the extent of $5,000 and other witnesses in his behalf fixed the sum at $3,000, the amount of the jury's verdict. In reducing the verdict to $2,000

the court said: "The measure of damages in such cases is, of course, the difference in value of the land before and after the construction of the railroad, excluding any enhancement of value by the building of the railroad, and in the very nature of the case this is largely a matter of opinion, and whether a witness has such knowledge of the facts as to make his opinion of any value is a question largely within the discretion of the trial judge, and the value of such testimony may be tested by a cross-examination of the witness as to the facts upon which the opinion is based. *St. Louis, A. & T. R. R. Co. v. Anderson,* 39 Ark. 167; *Texas & St. L. Ry.* v. *Kirby,* 44 Ark. 103, 106. . . .

"In testing the sufficiency of the evidence to support the verdict we must view it in the light most favorable to appellee. In the case of *Railway* v. *Combs,* 51 Ark. 324, 11 S. W. 418, Chief Justice Cockrill said: 'The same principles obtained in these statutory proceedings as in common law suits in regard to new trials. When the verdict is sustained by competent evidence, we do not interfere.' But we have concluded that the competent testimony does not sustain the verdict. It is true that one or more witnesses for appellee placed the damage at a sum equaling the verdict returned by the jury, but the cross-examination of these witnesses fails to show any fair or reasonable basis for the opinion."

We have repeatedly recognized the rule, "that where there is any evidence of a substantial nature, which, by positive statements or reasonable inference, when given its strongest probative value, tends to support the finding of the jury, that finding will be sustained, although, from the record presented to this court, it might seem to be against the preponderance of the credible evidence." *Mo. Pac. R. R. Co.* v. *Henderson,* 194 Ark. 884, 110 S. W. 516.

In the instant case appellee, Ralph Moss, is the only witness who placed his damages at a sum as high as the verdict returned by the jury. On direct examination he testified: "Q. What in your candid opinion is this 22 acres of land the city is taking worth per acre?

A. Around $350 an acre. Q. What in your opinion would be the reasonable, or fair market value of your entire tract of land as it stands before the city has taken this strip out of it? A. I would say around $15,000. Q. What, in your opinion, would be the market value, that is, what would you be able to sell the remaining land for after this 22 acres is taken out, taking into consideration the shape it is left in, and the remnants that are left there? A. I would say $6,500 or $7,000. Q. You don't think you could sell it for more than $7,000? A. No, sir. . . . Q. Let's see, then you think your total damage by reason of the taking of your 22-acre strip would be at least $8,000? A. Something like that, yes sir.''

On cross-examination appellee stated that his opinion of the market value of his land was based on its value as pasture land and ''what it would be worth to me.'' He also stated that he had recently bought a seven-acre tract similar to and near the lands here involved but situated on U. S. Highway 65 and for which he paid ''around $300 an acre.'' This land was bought for building purposes and appellee admitted on cross-examination that lands suitable for a building site on the highway are considerably higher in price than pasture land located off the highway. On further cross-examination he testified: ''Q. Is there other land in that vicinity that to your knowledge has sold that high? A. Yes. Q. Where? A. Just south of the airport 26 acres brought $3,500. Q. Does it have a house on it? A. Yes. Q. Does yours? A. No. Q. Does the house make a difference? A. No.''

Two witnesses for appellees who were engaged in farming and livestock raising and were familiar with market values in the vicinity, by positive statements, fixed the damages sustained by appellees at $6,000, while a third placed the damage at $6,500. Another witness for appellees estimated the value of the entire 124-acre tract at ''between $12,000 and $15,000'' and stated that the value of the lands remaining after taking of the condemned strip would be ''possibly one-half, or a little more.'' Witnesses for appellant estimated appellees' damages to be $3,000 to $3,500.

It will be observed that the estimate made by appellee, Ralph Moss, as to the amount of his damages is considerably higher than that of the four witnesses presented by him in support of his claim. When his testimony is tested by his cross-examination as to the facts forming the basis of his opinion, we conclude there is no reasonable basis to support a verdict in excess of $6,500. If, therefore, appellees will, within fifteen days, enter a remittitur for $1,500, the judgment will be affirmed for $6,500; otherwise, it will be reversed and the cause remanded for a new trial.