JACKSON *v.* ELLIS.

4-8558                                            212 S. W. 2d 715

Opinion delivered July 5, 1948.

*H. G. Leathers* and *Willis & Walker,* for appellant.

*Claude A. Fuller,* for appellee.

GRIFFIN SMITH, Chief Justice. Lillian Dudenbostel, 63 years of age, purchased a Packard automobile March 18, 1947, and without procuring a driver's license began operating it. She had not had previous experience as a driver. While Mrs. Dudenbostel was returning from Berryville to Eureka Springs the morning of April 11, 1947, accompanied by Mabel Ellis, the car collided with a truck owned by A. M. Jackson, driven by his son, Homer Jackson.

In June 1946 Northwestern Fire & Marine Insurance Company issued to Magnus Kettner a certain policy covering damages that might result to the owner of a designated Packard automobile. The car was sold to Mrs. Dudenbostel, who received an assignment of the insurance coverage. Following the collision on April 11th the Insurance Company (having settled with the assignee) sued A. M. Jackson for $700. Mrs. Ellis sued Jackson for $10,000. Jackson cross-complained, alleging that the Packard automobile was being jointly operated by Dudenbostel and Ellis, and that his truck had been damaged to the extent of $500. Mrs. Dudenbostel, alleging the negligence of Homer Jackson, and consequential personal injuries, sued A. M. Jackson for $5,000. Jackson cross-complained as to this action, asking compensation for damage to his truck, $500. The various causes were consolidated for trial, with judgments against A. M. Jackson and in favor of the Insurance Company for $700; against Jackson and in favor of Mrs. Ellis for $5,000, and against Jackson and in favor of Mrs. Dudenbostel for $2,500.

The Dudenbostel-Ellis car was being driven on Highway 62 when the collision occurred near Eureka Springs

at a point not far from the intersection of Highway 23. Occupants of the Packard testified very positively that the Jackson truck was seen at a substantial distance with its left front wheel on the "wrong" side of the blacktop center. The Packard was proceeding slowly, traveling not in excess of 15 or 20 miles per hour. As the truck continued and space between the two vehicles narrowed, each lady realized the danger. Mrs. Dudenbostel "hugged" her right side of the highway and had slowed almost to a standstill when the impact occurred. Each said there was nothing either could have done to avoid the mishap.

Homer Jackson testified that he was driving alone. In approaching the [intersection?] the Dudenbostel car appeared to be making a left turn "across the right hand side of the pavement, which was *my* side of the road. I thought they were going to go ahead and turn off the road, [so] I started by them on the left hand side. After I got closer it appeared they cut back to me. I tried to go around them on the wrong side and get out of the way, but didn't make it."

With these and other facts in evidence, a case was made for the jury on the question of negligence.

*First.*—The motion for a new trial contains fifteen assignments. Our conclusion is that prejudice did not result from any of the Court's rulings to which exceptions were saved unless it be said that the verdicts were excessive and that evidence concerning indemnity insurance carried by Jackson should have been excluded.

While testifying Mrs. Dudenbostel was asked: "After this accident occurred, and [after Homer Jackson] had gotten down from where his [truck] was, . . . did he make any statement to you about it?" Answer: "Well, he came up the hill . . . toward me. . . . I was quite hysterical and crying. He said, 'don't worry—it's all my fault'; and I said to him, 'Why didn't you go back to the right hand side of the road?' He said, 'Well, lady, I don't know. I had the crazy idea of cutting around you on the left. I'm just a nitwit'. And then he said, again, 'Don't worry: we

are fully covered by insurance and I'm taking all the blame' ''.

The Court was asked to instruct the jury that the reference to insurance was improper. The motion was overruled on the ground, seemingly, that the explanation given by Jackson was a part of the *res gestae,* and that the unnecessary comment regarding insurance was so closely related to and interwoven with the impulsive explanation as to render it inseparable.

Norman Faulkner, a witness for the plaintiffs, testified that after the collision he was standing near the car and asked Jackson what was wrong. The latter replied, ''Well, we had an accident. It's all my fault, and I take the blame.'' An attorney for one of the plaintiffs who sued for personal injuries interpolated, ''Is that all he said?'' The witness replied, ''He said something about being covered by insurance.''

It is urged by appellant that the attorney knew what the answer would be, that it could not possibly be a part of the *res gestae,* and that there was an unnecessary design to induce the witness to give inadmissible and prejudicial testimony. The writer of this opinion thinks this testimony should have been excluded. The majority, however, view the situation as summarized at page 1448, 56 A. L. R., where it is said that evidence showing an admission of liability by the defendant may properly be admitted, ''although it is developed that in making the admission the defendant stated that he carried liability insurance.'' California, Massachusetts, Michigan, and Missouri are cited by A. L. R.

In *Sims* v. *Martin,* 33 Ga. App. 486, 126 S. E. 872, it was held that where an automobile owner's declarations (that a collision was his fault, that he was going too fast, that he had insurance and would make settlement) were made immediately following the transaction, and while the injured party was still lying on the street, and before the owner (who was the driver) had gotten out of his car, they were admissible as part of the *res gestae*; and, although the part referring to insurance was expressly

withdrawn, there was no error in refusing to declare a mistrial.

The opinion in *Ward* v. *Haralson,* 196 Ark. 785, 120 S. W. 2d 322, written by the late Mr. Justice McHANEY, declares the law to be that where counsel for the appellees injected into the case [testimony] that appellant had insurance coverage, the action was "wholly inexcusable, uncalled-for by anything that had previously occurred in the case, and was highly prejudicial." The opinion then continues: "We think the remarks of the Court were not sufficient to remove the prejudice, and that a mistrial should have been declared. The obvious and only purpose in making the statement was to advise the jury that an insurance company would have to pay any judgment rendered. This was error."

It is contended in the instant case, and the majority accepts the explanation, that there was no planned and independent purpose by counsel for the plaintiff to emphasize insurance, or to draw from the witnesses any statements made with conscious reflection influenced by considerations other than the impulse to translate action into words. The rule governing admission of testimony as a part of the *res gestae* is too well known to acquire value by repetition.

*Second.*—The difficult question is whether the jury was influenced by passion and prejudice in awarding $2,500, and $5,000, respectively, to Mrs. Dudenbostel and Mrs. Ellis.

Mrs. Ellis testified that she was partially "knocked out" by the collision and had "fading" periods. Was taken to Basin Park Hotel (Eureka Springs) in an ambulance, and the following day was sent to Fayetteville hospital, where she remained ten days. A long gash was cut in one leg. It was "standing open" and bleeding. Ankle was hurt "in some way" and pains sometimes recur. Legs and ankle swell. Was also cut through the lip "here." The witness said there was a scar, but she didn't suppose the jury could see it. Also thought eyesight was damaged—"I attributed it to injuries; it 'seems' I don't

see as well as before. Think injury is to both eyes, rather than one. Pain under my hips was excruciating after the accident. Am nervous, especially at night when cars pass by and brakes 'screetch'."

Dr. J. F. Johns, who attended Mrs. Ellis at Basin Park Hotel, and later sent her to Fayetteville, substantially confirmed what the patient said regarding cuts and bruises. He added that her greatest complaint was of pains in the region of the right hip, but the Doctor "couldn't detect that there was anything amiss, any injury to it." He then explained that pain could not be seen, and that he accepted Mrs. Ellis' statements that she suffered; "but," said he, "she was evidently under great shock and mental stress and strain *somewhere*. . . . I couldn't say whether her spine was hurt—don't think any doctor around here could." [The Fayetteville physician was not called, nor did he testify by deposition.]

Mrs. Dudenbostel testified to the following list of injuries: She was thrown against steering wheel; has some fractured ribs and ribs that were badly bruised; chest was bruised, "and, holding on to the wheel the way I did, my wrist was 'strained' and I jammed my knees up against something and bruised them; couldn't use my right hand for a while and couldn't go up and down stairs. My right knee was not functioning the way it should. Was in a very bad nervous and mental condition, from which I still haven't recovered. Was hit somewhere above my eyes and I am suffering severe pains." The patient had made a trip to Chicago, thinking the change would do her good. Had been "out" about $50 for doctors, and nurses, and drugs. She added, "I think that I could now go back to work."

Dr. Ross Van Pelt testified that he saw Mrs. Dudenbostel April 11th at the Basin Park Hotel, "and later in my office where I made an examination." The patient had contusions of chest wall at junction of fifth, sixth, and seventh ribs, and "gasped some" when taking a deep breath. There were contusions on the left knee, and on the nose. The right wrist was sprained. The chest was

strapped to give comfort, with changes April 16th, 20th, and 25th. Mrs. Dudenbostel was "better" April 28th. The Doctor called on her or saw her May 5th and May 30th. The trial appears to have been conducted September 11, 1947, and Dr. Van Pelt saw the patient Sept. 10th. She had returned from Chicago and complained of some pain, "but this, I believe, was not related to the injury." The Doctor was positive Mrs. Dudenbostel's sixth rib was fractured, and perhaps the seventh. In summation, "She had this bruise on her chest wall and her left knee, a contusion of the nose, and the right wrist was sprained."

It is our view that any judgment for Mrs. Ellis in excess of $2,500 would be excessive, and that proof in support of injuries to Mrs. Dudenbostel does not sustain a judgment for more than $1,500. If, within fifteen juridical days remittitures are entered for $2,500 in the one case and $1,000 in the other, judgments will be affirmed. Otherwise the causes will be remanded for new trials; affirmed as to $700.00 judgment in favor of Northwestern Fire & Marine Insurance Co.