Texas Illinois Natural Gas Pipeline Company
*v.* Lawhon.

4-9835                                          251 S. W. 2d 477

Opinion delivered October 6, 1952.

*Ponder & Lingo* and *Owens, Ehrman & McHaney,* for appellant.

*Harrell Simpson,* for appellee.

Holt, J. Appellees owned 150-acre farm in Randolph County, consisting of four contiguous 40-acre tracts, lying north and south. A 10-acre plot in the northeast corner of one of the tracts had been sold to the United States for radio purposes. Appellant sought to condemn a right of way across this property in which to lay a pipe line. The parties were unable to agree upon the amount of damages to be paid, and on order of the court deposited $2,950 in the registry of the court before entering upon the property. This right of way was 75 ft. wide, 2178 ft. long, and ran diagonally across one 40 and the corners of two others, as well as the Government property, and amounted to 3.75 acres of appellees' property actually taken.

There was a verdict and judgment for $4,500 for appellees and this appeal followed.

For reversal, appellant alleged: (1) that the court erred in its instructions on the measure of damages; (2) that the verdict is excessive, and (3) that there was error in the court's refusal to give its requested instructions 2 and 4.

— (1) —

The court, at appellant's request, gave the following instruction on the measure of damages: "The petitioner, pursuant to authority conferred on it by proper governmental authority has constructed a pipe line across certain lands belonging to respondents. This action has been instituted to determine the amount of damage sustained by the respondents by virtue of the taking of their lands by petitioner and the construction thereon of its pipe line facility. This is the sole question you are to determine. There are three elements of damage you are to consider, as follows:

"1. The value of the strip of land, hereinafter called 'right of way,' actually taken by petitioner.

"2. The damage, if any, resulting to respondents by virtue of having their remaining lands separated by petitioner's right of way.

"3. The damage, if any, caused by the petitioner in the construction of its pipe line to lands or crops of respondents lying off the right of way."

Immediately following this instruction, the court orally instructed the jury: "The court might also caution you about what we sometimes speak of as severance damage. With regard to severance damage, no instruction has been given by the court, intended to cover what we called severance damage. The last instruction, just read to you, covers the damages. If there had been something built across the land that prevented ingress and egress, so that respondents could not get across the right of way from one part of their land to the other, there would be severance damage. You will not consider any damage

to respondents' other lands by reason of being separated by this right of way."

Appellant says: "The court has, in effect, first told the jury to determine the severance damages and then has told the jury that there can be no severance damage. The two parts of the instruction are directly conflicting and left the jury with no real basis upon which to determine damages."

The answer to this contention is that any conflict in the two instructions was invited and occasioned by appellant and it can not now, after having offered an instruction in which its liability for severance was admitted, complain that the trial court sought to remove this element of damages in appellant's favor.

— (2) —

Appellant's contention that the verdict is excessive, we think, must be sustained. Primarily, appellant argues that the court erred in permitting witnesses to express opinions as to what the damages relating to the decreased value of appellees' farm were, without giving any fair or reasonable basis on which such opinions were based.

3.75 acres were taken for the right of way. Appellees' own value of this land was $275 per acre, or a total of $1,031.25, which appears to be the highest value placed upon it. Under the law of this State, the owner of land is entitled to be paid the full value of the land embraced within the right of way easement, as if the fee had been taken even though the landowner, after the pipe line was constructed, had the right to continue using the surface of the right of way for farming or other purposes not inconsistent with the use of the easement. Appellant acquired by the condemnation proceedings the power to make such use of the right of way as its future needs required for the purpose for which the right of way was condemned. *Baucum* v. *Arkansas Power & Light Company*, 179 Ark. 154, 15 S. W. 2d 399.

Appellees were entitled to recover, in addition to the value of the land actually taken, for any loss of crops,

both on the right of way and off, caused by appellant, and for any damages to appellees' other land, and decreased market value that they might be able to show by competent proof.

After the pipe line had been constructed at a minimum depth of 3½ ft., the land was smoothed over and leveled off. Appellees can cross over at will. There were no fences, poles or obstructions and appellees are now cultivating most of the right of way. There are a few spots where quicksand came up along the pipe line which are still soft. Some of this sand was left scattered along and outside of the right of way.

Appellee, L. J. Lawhon, testified that his total crop damage amounted to $1,764.20, which when added to the value of 3.75 acres for the right of way, would total $2,795.45. Appellee also testified that his entire farm (150 acres) had depreciated in value from $50 to $75 per acre, and further: "Q. But you do say that putting a pipe line across your farm affects the value of it? A. Yes, sir. Q. Will it do that as long as the pipe line is there? A. Yes, sir. Q. And, just as soon as it is put in, the land value is affected? A. Yes, sir, the putting it in is what affects the value. Q. If a pipe line could be put down, without disturbing the soil, would the simple fact that a pipe line is laid under the soil affect the value? A. I would say, if you did not disturb the soil, it would not affect it—it would not hurt it. How do you figure it that your land has been affected and how do you calculate it has been damaged from $50 to $75 per acre, the whole farm? A. The inconveniences—probably ten years from now. You cannot get across the pipe line ditch, and it will take that long to get the hardpan packed, and the soil built up, so that it will produce. Q. They are buying that 75-foot strip of land? A. No, sir, they are taking it. Q. They are paying for that—how does that damage the rest of your farm? A. The inconvenience in trying to cultivate the rest of it. Where the line crosses, diagonally, across the corner, when you get in that corner, with machinery, you cannot turn. Q. Why not drive right on across the right of way? There is not any fence

along there? A. Yes, sir there is a fence there. Q. That is your fence? A. Yes, sir. Q. And you wanted it built where it is? A. Yes, sir. Q. Is that fence what makes it inconvenient to cultivate? A. No, if you attempt to cultivate across this ditch, and drop in, you would have to go get your neighbors to get you out. Q. Do you contemplate that that would occur, in fixing your damages? A. Yes, by the experience I have had with pipe lines. The Mississippi pipe line went through my land, in 1929, and brought up quicksand, and you still mire down along that ditch. The pipe line brings up the dampness. Q. You are cultivating this land right on across this 75-foot right of way, where the pipe line is laid? A. Part of it, I do. I cultivate up to a part of it and turn, and I have to go around part of it, to my crops. Q. Don't you have a crop across the Mississippi Pipeline Company's right of way? Yes, sir, I planted it. Q. It grows crops just like the rest of your land? A. In spots, it does. It is spotted. Q. How long has it been since that pipe line was put down? A. It was put in in 1929. Q. And the next pipe line on your farm was put in in 1948 or 1949—not over three years ago? A. About three or four years ago. Q. Do you experience any inconvenience in farming that land? A. Yes, sir, and it does not produce well. Q. Your property was already divided by a pipe line before the building of this last pipe line, involved in this case? A. Yes, sir. Q. Is there any inconvenience suffered in cultivating your land, caused by the highway through it? A. Well, that is useful. I cultivate up to it. Q. Is there any other things that you take into consideration in estimating your land to be damaged from $50 to $75 per acre? A. Yes, sir, the bringing up of the quicksand and scattering it on top of the soil. I had a party to ask me if I had limed my land. It is white, with quicksand. Q. That is along the pipe line, on the pipe line right of way? A. Yes, sir, and scattered out over the field, on each side.''

Other witnesses gave their opinions that the decrease in the market value of the farm because of the laying of the pipe line was from $25 to $80 per acre.

The basis on which witness, Story, on behalf of appellees, fixed his opinion that all of appellees' farm had been damaged as much as $80 per acre (the highest figure used by any witness) appears from his testimony as follows: "Q. You stated, in your opinion, that land was worth $250 before the pipe line was constructed across it? A. Yes, sir. Q. Now, Mr. Story, why, in your opinion, is that farm worth that much less now than it was before the pipe line went in? A. By going by other farms. I had a farm a mile south, and had a farm in the same condition. Q. J. L. Story is your father? A. Yes, sir. I own a dowery right in the farm and am overseer on the farm, and this year I lost a crop on a strip a quarter of a mile through it with good corn growing right up to it. It will take five years to build it back up to its fertility, so it will produce like it did before. Q. Is that your reason for saying that the Lawhon farm is not worth on the market more than $150 to $175? A. Yes, these quicksand holes in it knocks the value down, and you bog down along the ditch line, and it has quicksand all over the ditch line. Q. How wide were those ditches— how wide was the ditch across this land? A. In some places it was more than 25 feet wide. Q. Why, if this land was worth as a farm $200 an acre before the pipe line went across it is it only worth $150 to $175 an acre now. A. It has been damaged that much. Q. How many acres has he in that farm? A. I do not know. I believe he has 4 forties. Q. In what amount would you say that farm has been depreciated in value? A. I would say one-third. Q. How much would one-third be? A. I would say it has been damaged $80 an acre. Q. How much for the whole farm? A. $80 per acre, and he has 4 forties, or 160 acres. You can figure it out. Q. That would be $12,000? A. Yes, sir, that is what it figures.

"Q. Suppose he has only two forties that has been damaged, what would the amount of damage be? A. $80 per acre. Q. How much of that land did the pipe line cross? A. All four forties. Q. Is that what you base your testimony on? A. Yes, sir. Q. Suppose it touched only three forties? A. It would be $80 per acre. Q. And, suppose it run across only two forties? A. It would be

the same, $80 per acre. Q. And, still you say it would ruin the two forties that it did not touch? A. I am stating that it damaged the forties it touched $80 per acre. Q. Suppose it touched only a corner of one forty? A. It would damage that corner $80 per acre. Q. Suppose this pipe line touched only 158 feet on one forty, how much would that forty be damaged? A. I would say $80 per acre. Q. Suppose a strip 75 feet wide and 158 feet long is taken across the corner of one forty, how much would it damage that forty as a whole? A. I would say one-third. Q. Suppose it went right through the center of the forty? A. I would still say one-third. Q. You fix the damage the same to each forty, regardless of how much of the land this pipe line touches? A. Yes, sir.''

The testimony and opinions of other witnesses, relating to decreased value of the farm, were based, in effect, on similar reasons.

After a careful review of the testimony of all the witnesses giving their opinions as to the depreciation value of this 150-acre farm, we have concluded that in no instance has a witness, by competent testimony, stated substantial facts upon which to base such opinion as to decreased value.

The principles of law announced in the case of *Malvern & Ouachita River Railroad Company* v. *Smith*, 181 Ark. 626, 26 S. W. 2d 1107, apply with equal force here. There this court, in an opinion by Judge Frank SMITH, said: ''In testing the sufficiency of the evidence to support the verdict we must view it in the light most favorable to appellee. In the case of *Railway* v. *Combs*, 51 Ark. 324, 11 S. W. 418, Chief Justice COCKRILL said: 'The same principles obtain in these statutory proceedings as in common law suits in regard to new trials. When the verdict is sustained by competent evidence, we do not interfere.' But we have concluded that the competent testimony does not sustain the verdict. It is true that one or more witnesses for appellee placed the damage at a sum equaling the verdict returned by the jury, but the cross-examination of these witnesses fails to show any

fair or reasonable basis for the opinion.'' See, also, the recent case of *City of Harrison* v. *Moss*, 213 Ark. 721, 212 S. W. 2d 334.

— (3) —

Appellant's third contention that the court erred in refusing to give its requested instructions 2 and 4 is untenable for the reason that the instructions given appear to have fully and fairly covered these requests and all other issues. The court was not required to multiply instructions.

We hold that there is no competent evidence to support a verdict for more than $3,000, and that the judgment should be reduced to this amount, and if appellees will, within fifteen days, remit the excess, the judgment will be affirmed for $3,000; otherwise, it will be reversed and remanded for a new trial.

ED. F. McFADDIN, Justice (dissenting). In reducing the judgment, this Court is substituting its own opinion for that of the jury, which is supposed to settle disputed questions of fact.

The testimony showed that the Pipe Line Company not only took 3.52 acres of land for a right-of-way, but also trespassed on 10 acres adjoining the right-of-way and covered the said 10 acres with quicksand two to four feet in depth. One witness testified that the entire 10 acres was ruined for cultivation, and that it was worth the value of the 10 acres to get it back into as good a state of cultivation as before the Pipeline Company damaged it. There was substantial evidence that the land was worth $275 an acre before the Pipeline Company entered the land.

Furthermore, the plaintiff testified that his crops, growing on the 13.58 acres, were lost, and that his crop damage was $1,764. With the foregoing testimony in the record, here are the calculations:

3.52 acres actually taken for right-of-
    way @ $275.00 per acre.............................$  968.00
10 acres rendered worthless, @ $275.00
    per acre ........................................... 2,750.00
Crop damage ........................................ 1,764.00
                                                  _____
                                                  $5,482.00

In the light of the foregoing, I do not see how this Court can say that the verdict of $4,500 is excessive. The question is not what we might have decided if we had been in the jury box. The question is whether there is substantial evidence to sustain the jury verdict. I find that there was. We are not supposed to usurp the functions of the jury.

For the reasons herein stated, I am of the opinion that the judgment of $4,500 should be affirmed in its entirety; and I am authorized to state that Mr. Justice MILLWEE joins me in these views.