UNION COUNTY *v.* RICHARDSON.

5-810                                      287 S. W. 2d 1

Opinion delivered February 20, 1956.

*Bruce Bennett* and *William I. Prewitt,* for appellant.

*Walter L. Brown* and *Robert C. Compton,* for appellee.

ED. F. McFADDIN, Associate Justice. This appeal results from the condemnation of lands for the widening of a highway. The County Court of Union County made its order appropriating each of two parcels; and the landowners—Richardson and Harrell—filed their respective claims, which were denied. Appeals were perfected to the Union Circuit Court where the cases were consolidated and tried to a Jury. A verdict was rendered in favor of Mr. and Mrs. Richardson for $3,086.00, and in favor of Mr. and Mrs. Harrell for $4,000.00. Union County has appealed, urging the two assignments now to be discussed:

*Assignment No. 1*

The appellant says: "That the verdicts of the Jury were excessive; that there is no substantial evidence in the record to support these verdicts; that the verdicts are the result of bias and prejudice and that witnesses for plaintiffs failed to show any fair and reasonable basis for their opinion." In testing the sufficiency of the evidence to sustain the verdicts as against the attacks made by appellant in this assignment, we consider separately the evidence in each claim.

(a) *The Richardson Claim.* Mr. and Mrs. Richardson's property had a frontage of 740 feet on the highway and the County took a 30-foot strip from the entire frontage of the Richardson land. Here is Mr. Richardson's testimony, as contained in appellant's abstract:

"The taking required the moving of my fence back, the replanting of everything that I had there and the fixing of my driveway as it had been before. Union County moved my fence; they put the stakes up but that is as far as they went. I lost all of my fencing wire and the replacement value of it would be $140.00. The labor to put the fence wire on the stakes would cost $10.00 or $12.00. Along the front of my place, I had climbing roses placed 10 feet apart; I also had five pink dogwood trees, some bulbs and other things which were lost. My rose bushes were six years old. I believe the value of those rose bushes would be $4.00 each. I had about 10 crape myrtle trees there and about 2,000 bulbs. The value of the bulbs to me would be about $700.00. What they would be worth to somebody else would be a lot different. I would estimate the value of the pink dogwood trees at $200.00 each. I believe that I had between 35 and 50 oak trees and I would value them between $40.00 and $50.00 each.

"Before my land was taken I had a driveway which was blacktopped with cement side curbings. They have replaced my driveway with two cement slabs two feet wide. I believe it would cost $300.00 to $375.00 to put

my driveway back like it was. In my opinion, the tract of land taken by Union County would be worth at least $4,000.00. In my opinion the reasonable cash value of my property before it was taken was $37,500.00 and it was $32,500.00 afterwards."

The Richardsons introduced corroborative testimony; and the County introduced evidence tending to show that Mr. Richardson's ideas of his damages were tremendously magnified and that, in fact, he was benefited far more than he was damaged. But the problem of weighing the testimony of both sides was a matter for the Jury, as was also the question of determining the credibility of the witnesses. (*Bridgman* v. *Baxter County*, 202 Ark. 15, 148 S. W. 2d 673.) The Jury elected to adhere to the testimony of Richardson and his witnesses rather than to that of appellant's witnesses. We have detailed sufficient of Mr. Richardson's testimony to demonstrate that there was substantial evidence upon which to base the verdict of $3,086.00 for the Richardsons. In addition, the Jury actually viewed the premises. We find nothing to indicate that the Jury was biased or prejudiced; and we find that the witnesses showed the basis for their opinions. In short, appellant's first assignment is without merit insofar as concerns the Richardsons' claim, because Richardson and his witnesses made a case which measured up to the requirements contained in the cases relied on by appellant, to-wit: *Ark. State Highway Comm.* v. *Byars*, 221 Ark. 845, 256 S. W. 2d 738; *Malvern & Ouachita River RR. Co.* v. *Smith*, 181 Ark. 626, 26 S. W. 2d 1107; *City of Harrison* v. *Moss*, 213 Ark. 721, 212 S. W. 2d 334; and *Texas Illinois Co.* v. *Lawhon*, 220 Ark. 932, 251 S. W. 2d 477.

(b) *The Harrell Claim.* Mr. and Mrs. Harrell's property had a frontage of 340 feet and a depth of only 150 feet; a twenty-foot strip was taken from the entire frontage, leaving a depth of only 130 feet and placing the Harrell home 20 feet closer to the highway. Here is a portion of Mr. Harrell's testimony, as contained in the appellant's abstract:

"Prior to the new Highway, my property was practically on a level with the road. It was a desirable place to live, but now it isn't. They took a number of the trees when they put the new road in. Prior to the taking we had a good gravel driveway on a level with the road. Now, my place sits on an embankment fully six feet high from the middle of the highway. My yard is now much smaller than it used to be; to have it as it was before would require the moving of the house and the excavation of some dirt. It would cost $2,000.00 to move all that dirt.

"I have lived on my property for nine years and it is my home. Before the new Highway was put in, I could have sold the property for $15,000.00 to $18,000.00. Now I do not believe I could get more than $7,000.00 or $8,000.00 for it."

Other witnesses for Harrell stated: that to grade down the Harrell lot and move back the house would cost $4,265.13[1]; that the value of the Harrell property before the taking was $18,000.00 and the value after the taking was only $8,000.00; and that the value of the Harrell property was reduced 50% by the taking. According to appellant's witnesses, the Harrells were really benefited by the taking; but, as heretofore stated, the matter of damages was for the Jury to decide on the conflicting testimony. It is sufficient for us to say that there is substantial evidence to support the verdict of $4,000.00 for the Harrells; and we conclude that the appellant's first assignment is also without merit regarding the Harrell claim.

### Assignment No. 2

In this assignment the appellant says: "The Court erred in stating that assessed value was not proof of the value and in refusing to permit cross-examination of appellees relative to assessments, which error was not cured by subsequently permitting testimony by the as-

---

[1] The Trial Court stated that this evidence was admitted only to be considered with the other circumstances to arrive at the correct measure of damages.

sessor thereon." In the cross-examination of Mr. Richardson, this occurred:

"Q. How much do you have that property assessed for?

"Mr. Brown (interrupting): Your honor, we object to the question.

"The Court: The objection is sustained.

"A. What I think it is worth, and what I have it assessed for is two different things.

"The Court: The objection is sustained; that is not proof of the value. I have ruled on that.

"Mr. Hart: Note our exceptions to the ruling of the Court."

The appellant, in arguing this assignment, says:

"Ark. Stats. 76-521 provides that all Courts and juries in condemnation cases for Highways shall take in consideration the fact that lands are required to be assessed at 50% of their true value. Appellant recognizes that the assessed valuation is not a controlling factor in arriving at the value of condemned property; however, it is a factor to be considered. *Montgomery County* v. *Cearley*, 192 Ark. 868, 95 S. W. 2d 554 (1936); *Washington County* v. *Day*, 196 Ark. 147, 116 S. W. 2d 1051 (1940)."

We do not find anywhere in the record that the appellant sought to cross-examine either of the Harrells on the assessed valuation of their property. So this assignment goes only to the Richardson claim. But even as to it, we hold that the record shows the appellant has no just cause to complain.

The ruling in which the Court refused to allow Mr. Richardson to be cross-examined on the assessed value of his property appears on page 65 of the transcript. The next day in the course of the trial (and on page 210 of the transcript) the appellant was permitted to call the tax assessor of Union County, and he testified that the

Richardson property was assessed at $1,535.00 and the Harrell property was assessed at $300.00; and on cross-examination the assessor testified as follows:

"Q. Mr. Jerry, property is assessed, you have been there and you have looked over your books?

"A. Yes, sir.

"Q. That is no criterion for the valuing of property in this county is it?

"A. No, sir.

"Q. It is no test at all, is it?

"A. It's their assessment, Mr. Brown, their valuation they put on their property.

"Q. There is very valuable property in this county that is assessed at almost a nominal figure, is there?

"A. I imagine that is so."

Furthermore, at the request of the appellant, the Court instructed the Jury:

"You are instructed that the law of this State provides that all lands are required to be assessed at fifty per cent of their true value, and it is proper for you to consider this, together with all other facts and circumstances in evidence before you in fixing the value of the lands taken."

Since the appellant (1) never sought to recall Mr. Richardson for further cross-examination after the assessor testified; (2) never showed that Mr. Richardson personally knew for what amount the property was assessed; and (3) appellant's own witness, the tax assessor, testified, without objection, that in Union County assessed valuation had practically no relation to value—in view of all these matters and the instruction previously copied—we hold that the appellant is in no position to complain about the Court's ruling in regard to the cross-examination of Richardson.

Affirmed.