ARK. STATE HIGHWAY COMM. *v.* SNOWDEN.

5-2414                                           345 S. W. 2d 917

Opinion delivered May 8, 1961.

*Dowell Anders, W. R. Thrasher* and *O. Wendell Hall, Jr.,* for appellant.

*Catlett & Henderson,* for appellees.

PAUL WARD, Associate Justice. This is an eminent domain action wherein, on appeal, the only issue is the amount of the judgment entered in favor of the landowners for land taken and damages to adjacent land.

Highway No. 67, a limited highway, runs from Little Rock to Benton, a distance of approximately 28 miles. Where the subject property is located this highway runs

in a southwesterly direction toward Benton, and running almost parallel to it is the old blacktopped highway, No. 5, about one and a quarter miles to the north. Approximately midway between Little Rock and Benton the Alexander road (black-topped) runs from No. 5 south (along the line between Pulaski County and Saline County) to and over No. 67 (on an overpass). The subject land (owned by Mr. and Mrs. R. B. Snowden, appellees) consists of 40 acres (described as the Southeast Quarter of the Southeast Quarter of Section 12, Township 1 South, Range 14 West) being on the west side (and abutting) the Alexander road. The said forty acres does not border on No. 67 or No. 5, but is approximately 150 or 200 feet from both.

On August 19, 1957, appellant (the Arkansas Highway Commission) filed suit to condemn a small portion of Snowden's land, described substantially as follows:

Beginning at the southeast corner of the said forty (near the No. 67 overpass) and running west 84 feet, thence in a north-northeasterly direction 445.9 feet to a point, thence east 40 feet to the east line of said forty, and thence south 439 feet to the point of beginning, consisting of .322 acres.

Appellees, in their answer, asked for the value of the property taken and for damages to the rest of the forty acres.

The trial judge, sitting as a jury, rendered judgment in favor of appellees in the total amount of $12,000. In doing so the trial judge made a finding of facts to which we will later refer. Appellant appeals on the sole contention that there is no substantial evidence to support the judgment for the full amount of $12,000.

After careful consideration we have concluded, for reasons hereafter set out, that appellant's contention must be sustained. In so concluding we are aware that certain well established legal principles must be observed. The judgment in its entirety must be sustained if there is substantial evidence to support it. *Missouri Pacific Transportation Co.* v. *Sacker*, 200 Ark. 92, 138

S. W. 2d 371. The testimony must be considered in the light most favorable to appellees. *Mutual Benefit Health and Accident Association* v. *Basham,* 191 Ark. 679, 87 S. W. 2d 583. It is well established that the findings of the trial judge in this instance must be treated the same as a jury verdict, but this court has the authority to decide, as a matter of law, what constitutes substantial evidence.

*Value of the Forty Acres.* We think the trial court erred in fixing the market value of appellees' land at $50,000. Only four witnesses testified as to the value, two for appellees and two for appellant. Both of appellees' witnesses fixed the value at $50,000. One of appellant's witnesses fixed the value of $32,000 and the other one at $30,000. All of the four witnesses appear to be equally well qualified, although one of appellant's witnesses was the only one to say he was acquainted with land values in Saline County. As a basis for their estimates both of appellees' witnesses appear to have relied heavily on the price for which a parcel of land across the Alexander (Jones land) road sold for. That land, consisting of 31.59 acres sold, they said, for $50,000. The trial court, in its finding of facts, made this statement: "Testimony of the witnesses as to the damages is, in the opinion of the court, completely irreconcilable and leaves no room for a compromise between the figures submitted by the various experts."

We think the above statement indicates a misconception of the function of a trial judge sitting as a jury. Since his findings are given the force of a jury finding on appeal it must follow that he should exercise the functions of a jury. As such he was not obligated to accept one figure and reject the other, but to weigh all the testimony and, if possible, reconcile it. In the case *Bridgman* v. *Baxter County,* 202 Ark. 15, 148 S. W. 2d 673, we find this statement:

"Five real estate men testified as to values, damages and benefits, four for the defendant and one for the plaintiffs, the latter being himself a claimant and an interested party. We do not attempt to reconcile the

conflicting opinions of these witnesses, as this was a question for the jury.''

There are present in this case several elements or factors which the trial court could have but patently did not consider in an attempt to reconcile the disparity in the conclusions of the two sets of witnesses. (a) Appellees paid $20,000 for their land in 1955; which is of some significance, *Arkansas State Highway Commission* v. *Watkins*, 229 Ark. 27, 313 S. W. 2d 86; (b) Appellees assessed this forty acres for $300, which (at 20% of the real value) indicates to some degree an actual value of $1,500, which was proper for consideration, (Ark. Stats., § 76-521 and *Omohundro* v. *Saline County*, 226 Ark. 253, 289 S. W. 2d 185); (c) Appellees' land fronted 1,320 feet on the Alexander road while the Jones' land fronts 1,247 feet, appellees' land does not front on the main highway No. 67, while the Jones' land fronts 440 feet, appellees' land does not front on highway No. 5 while the Jones' land fronts 753 feet, and the Jones' land had on it revenue producing property of an undisclosed amount which could have enhanced its value; (d) It is conceded that where the Jones' property abuts No. 67 the property is wholly commercialized, and it is further conceded that such property is more valuable than residential property such as appellees' property is conceded to be. In addition to the above, the record reflects that just south of appellees' forty acres there is a strip of land some 100 to 150 feet wide between it and highway No. 67 where there is located a filling station, a cafe, a car-sales business, and a junk yard. This condition is such that appellees' witnesses conceded that residences would likely not be built facing toward highway No. 67.

We point out also a misconception of the testimony on the part of the trial court which appears to have influenced its decision to accept the value fixed by appellees' witnesses. In his findings the trial judge said that ''the testimony was in hopeless conflict as to the highest and best use that the land could be put to,'' but we find that there was no conflict on this point. Appel-

lees' two witnesses agreed that such use was for subdivision. One of appellant's witnesses concurred unqualifiedly with appellees' witnesses on this point and the other said it could be used for that purpose.

It is admitted as common knowledge that it would cost a great deal of money to pave streets and provide for utilities to convert forty acres of land into a housing project, and one would hardly undertake such a venture unless he was sure there was a demand to justify it. We find little if any testimony of that nature by appellees' witnesses, but Wesley Adams, for appellant, stated without contradiction that there was no such demand. He further stated that there was a subdivision near appellees' property and that only one little "Shell House" had been built on it within the last two years. Adams also stated that appellees' property was made more desirable because of the improved access to the highway. Ark. Stats., § 76-521 says that, ". . . any court or jury considering claims for right-of-way damages shall deduct from the value of any land taken for a right-of-way the benefits of said State highway to the remaining lands of the owner." It is apparent from the finding of facts that the trial court gave no consideration to this statute or Adams' testimony. It is interesting to note that the trial court frankly stated it was "difficult to believe, using his own knowledge of values of lands, that claimant's lands could be worth $50,000."

In view of all the above we must in good conscience say that there is no substantial evidence to support a finding that appellees' land had, in 1957, a market value of $50,000. We are aware that two qualified witnesses were of the opinion that the land was worth the above figure, but that opinion must be evaluated in relation to the facts (heretofore set out) upon which it is based. See: *City of Harrison* v. *Moss,* 213 Ark. 721, 212 S. W. 2d 334; *Arkansas State Highway Commission* v. *Byars,* 221 Ark. 845, 256 S. W. 2d 738.

This court cannot of course, in a situation like this, say there is substantial evidence to justify a certain amount—no more and no less—but we can, as we have

frequently done heretofore, fix an amount with the conviction that there is no substantial evidence to support a larger amount. See: *Railway Express Agency, Inc. v. Gee,* 197 Ark. 925, 125 S. W. 2d 802; *Missouri Pacific Railroad Company* v. *Barham,* 198 Ark. 158, 128 S. W. 2d 353; *Coca Cola Bottling Company of Southeast Arkansas* v. *Bell,* 199 Ark. 386, 134 S. W. 2d 549; *Fort Smith Couch and Bedding Company* v. *Rozell,* 203 Ark. 35, 155 S. W. 2d 707; *Jackson* v. *Ellis,* 213 Ark. 826, 212 S. W. 2d 715; and *Arkansas State Highway Commission* v. *Watkins,* 229 Ark. 27, 313 S. W. 2d 86. The essence of what we have just said amounts to saying that, in reducing a jury verdict for lack of substantial evidence, we give the benefit of any doubt to the judgment holder, as we will do in reaching a final conclusion in this opinion.

*Damages.* We now proceed to examine whether there is substantial evidence to support the judgment for $12,000. The recognized general rule calls for a determination of the market value of the forty acres before the taking and subtracting therefrom the determined market value after the taking, the difference being the amount of compensation for the .322 acres of land taken plus the damages to the rest of the forty. However, since we have decided that the first mentioned item of value is excessive the general rule must give way to or be supplemented by an evaluation of the evidence regarding the value of land taken and the resulting damages to the rest of the forty. Such evaluation must, however, be made in the light of the excessive value of the forty acres as it was determined by the trial court.

Appellees' witness Reid estimated the .322 acres (together with the loss of footage on No. 5) to be worth $4,500, based on comparable sales along No. 67. This comparison, we feel, was not fair to the State, first because No. 67 is a more important road than No. 5 and also because commercial property is conceded to be more valuable than residential property. He estimated the damage to the rest of the forty acres at $7,500. The reason given was that the forty (valued by him at $50,000) was damaged 15%. He gave no detailed expla-

nation of how he arrived at 15%. Such testimony, as we have heretofore explained, is not substantial to support the figure of $7,500.

Appellees' witness Barry, stating that he took a different approach, estimated the total amount for the taking and damages at $13,400. His explanation of how he arrived at the above figure is not entirely clear. He said that the logical entrance to the forty acres (for subdivision purposes) would be off the Alexander road at the middle of the forty; that this was not now possible since the state had taken the 439 foot frontage; and this would create an engineering problem in platting. After a lengthy explanation of his theory the witness concludes:

". . . if you put the road over this way too far you would have too many lots facing that road that would have to come this way, but this would divide it equally, about 660 feet on two separate blocks. Now this fellow would have to go up here to get out; of course, there could be another road up here between the main service road that would come up here. Then this taking here, this is to form selling lots fronting this road here. Put this on the North 20, and already you have here a paved road available there, but on the South 20 you have to come and build your own road. You have to create your own frontage and here you come in and build your own road to create your new frontage, and that being through 660 feet there is a direct loss to the property owner, because he can't use it because it narrows down too much, he can't use it. That would be 660 feet then less 65 which would be 635 feet at $10.00 a foot would be $6,350.00. This new road would be 635 feet long and at $10.00 a foot to construct this paved road would be an additional $6,350.00. Then to bring the gas line in there would be $1.10 a foot for approximately 710 feet."

From the above it is not clear to us just how appellees would lose 635 foot frontage when the State has taken only 439 feet, nor is it clear why 635 feet of extra road, in addition to what would have to be built in any event

for a subdivision, would be required. This was not explained by the trial court in the finding of facts. At any rate a shadow of unsubstantiality is cast over the entire matter by the last portion of the witness' testimony.

Q. "You know it costs lots of money to develop a subdivision, to put in utilities and paved streets?"

A. "Yes."

Q. "And it's purely a speculative proposition?"

A. "Yes, a subdivider always speculates, he gambles."

Q. "And there's other land closer to Little Rock and closer to Benton that has not been developed?"

A. "Uh-huh."

Q. "That is all."

Speculation is not a sound basis upon which to predicate a verdict, and it cannot take the place of proof. See: *Sadler, Trustee* v. *Scott*, 203 Ark. 648 (at page 652), 158 S. W. 2d 40, cited and approved in *Arkansas Highway Commission* v. *Byars, supra* at 852.

In contrast to the above, we have the expert testimony of the two witnesses on behalf of appellant. Adams, who owns property in Saline County and who stated that he "had experience in buying and selling" in that county, figured appellees' total damage at $161 but was willing to make it $175. His reasons, in part, are set forth in his own words as follows:

Q. "What was the market value of the property after part of it was taken by the Highway Department?"

A. "Actually there is very little difference, if any, in the market value. In fact, by reason of the improved access to the property afforded by the new highway it has made the property a more desirable piece of property to own for further development for most any use it might have."

Watson, an expert witness for appellant, after explaining his reasons, fixed appellees' total damages at $250, and he was also of the opinion that the highest and best use of the property was for housing development purposes.

Having in mind all we have heretofore set out and giving appellees the benefit of all reasonable doubts, we cannot in good conscience say that the substantial evidence in this case supports a judgment in excess of $7,000. In doing so we answer in the negative the questions posed and approved in *Arkansas Highway Commission* v. *Dupree,* 228 Ark. 1032 (at page 1037), 311 S. W. 2d 791, to-wit:

"Must appellate judges close their eyes and their minds to the obvious fact that in a particular case the evidence, from its very nature, could not have been convincing, though it produced a given result? Shall we affirm that such evidence was necessarily substantial because it was favorably acted upon by the jury?"

Therefore, if appellees enter within 17 calendar days a remittitur accepting a judgment in the amount of $7,000, such judgment will be affirmed, otherwise the judgment of the trial court will be reversed and the cause remanded for a new trial.

ROBINSON, J., not participating.

McFADDIN and JOHNSON, JJ., dissent.

ED. F. McFADDIN, Associate Justice, dissenting. My dissent is because—as I see it—the Majority of this Court is sitting as an appellate jury and weighing and evaluating the evidence.

This case was tried in a law court. The parties agreed —as they had a right to do—to try the case before the Court without a jury. Our cases are legion to the effect that in such a situation the finding of the Trial Court has the force and effect of a jury verdict; and it is the duty of the Supreme Court to affirm the findings if there is any substantial evidence in support thereof. I submit that there is an abundance of evidence to support the findings

of the Trial Court. Two qualified real estate men—A. C. Reid and Floyd Barry—testified for the landowner. One said that Snowden had sustained damages of $12,500.00, and the other said Snowden had sustained damages of $13,400.00. These witnesses were cross-examined at length. Whether these witnesses "knew what they were talking about" was for the Circuit Court, as the trier of the facts. Yet the majority opinion of this Court clearly shows that the Majority has examined, weighed, and evaluated the testimony of these two witnesses, just as a jury of a trier of the facts should do. It is not the prerogative of this Court to sit as an appellate jury.