ASHER *v.* BYRNES.

Opinion delivered December 4, 1911.

1. MASTER AND SERVANT—DUTY AS TO APPLIANCES.—It is the duty of the master to exercise ordinary care to provide his servants with reasonably safe appliances and tools with which to work, and to make reasonable inspection to see that the appliances and tools thus furnished are safe. (Page 201.)

2. SAME—RISKS ASSUMED BY SERVANT.—When a servant enters another's employment, he assumes the ordinary risk and hazards incident to the service, including all risks known to him and those which are open and obvious. (Page 201.)

3. SAME—RISKS NOT ASSUMED BY SERVANT.—A servant, in entering another's service, does not assume the risk from hidden defects in the tools or appliances furnished him which are due to the master's negligence and are unknown to him. (Page 202.)

4. SAME—DUTY TO MAKE INSPECTION—INSTRUCTION.—In an action by a servant to recover for personal injuries alleged to be due to the master having furnished a defective appliance, it was error to instruct the jury to the effect that the plaintiff could not recover if by ordinary care he could have discovered the defects in the appliance. (Page 202.)

5. SAME—CONTRIBUTORY NEGLIGENCE—WHEN QUESTION FOR JURY.— Even though there may be two ways for a servant to perform his work, one of which is less dangerous than the other, and he adopted the more dangerous way, if that way is not so dangerous that a person of ordinary prudence would not have undertaken it, the court can not say that the employee was negligent as matter of law. (Page 203.)

Appeal from Boone Circuit Court; *George W. Reed,* Judge; affirmed.

*Guy L. Trimble,* for appellant; *G. J. Crump, E. G. Mitchell* and *W. N. Ivie,* of counsel.

Instructions 3 and 9 are in conflict with one another. The courts uniformly hold that the giving of conflicting instructions is reversible error. 74 Ark. 441; 77 Ark. 203; 24 Cal. 226; 23 Col. 314; 35 Pac. 39; 128 Ill. 173; 79 Ind. 432; 94 Mo. 475; 69 Miss. 319; 6 How. 212.

Instruction 9 and also 21 misstate the law in making it the duty of plaintiff to look for defects. 95 Ark. 295; 89 Ark. 428; 92 Ark. 109; 70 Ark. 299.

Instruction 22 errs in failing to make it a condition that appellant knew of two ways to clean the machine. 26 Cyc. 1506; 71 Ga. 405.

*J. Wythe Walker, T. D. Wynne* and *Pace & Pace,* for appellee.

A conflict between instructions 3 and 9 was not raised in the lower court, either by directing its attention specifically to such supposed conflict, or in the motion for new trial, and appellant can not complain here on that ground. 66 Ark. 46; 70 Ark. 427; 75 Ark. 111. But these instructions are in fact not conflicting, the one, No. 3, being a correct declaration of law upon assumed risk, and the other, No. 9, on contributory negligence. 89 Ark. 428; 92 Ark. 109. Instruction 21 is also a correct declaration upon contributory negligence. Although the two defenses are separate, yet both may be available under the same state of facts. 77 Ark. 367.

FRAUENTHAL, J. This was an action instituted by J. D. Asher, the plaintiff below, to recover damages for a personal

injury which he sustained while in the defendant's employment. The defendants resisted the recovery, chiefly upon the grounds (1) that the injury was due to a risk which the plaintiff had assumed, and (2) that it was caused by his own contributory negligence. Upon a trial of the case, a verdict was returned in favor of the defendants.

The defendants were contractors, engaged in constructing a courthouse in the town of Harrison, and employed plaintiff in July, 1909, as a laborer thereon. In September, 1909, he was directed by the defendants to work at a machine used for the purpose of mixing concrete. It had a hopper shaped like a half barrel, through which there passed a rod or shaft upon which steel blades were fastened. The machine was operated by the application of steam, which caused a revolution of the blades by which the cement, sand and water were properly mixed. One of the plaintiff's duties was to clean the machine by removing the concrete which clung to the blades. This was done either by pouring water down through the machine, which would remove the mixture when not too hardened, and also by using a steel chisel or hook in knocking off such mixture when it had become more hardened on the blades.

There was testimony adduced upon the part of the plaintiff tending to prove that the machine was cleaned by pouring water into it while it was put slowly in motion, and that the concrete clinging to the blades would be removed by means of a chisel inserted by the hand either in the top or bottom of the machine. The testimony on the part of the defendants tended, however, to prove that while the machine was in motion the concrete clinging to the blades was removed with an iron hook or chisel used only at the bottom of the machine, and that it was only cleaned with a chisel inserted at the top when the machine was at rest.

It appears that on the afternoon of October 18, one of the blades broke, and another blade was put in and attached to the shaft by one of the defendants, and that at the time this repair was made the plaintiff was not present. The testimony upon the part of the plaintiff tended to prove that the new blade thus put in projected from the shaft farther than the other blades, so that it extended nearer the outer portion of the machine by a distance of from one to one and one-half inches.

Plaintiff continued working at the machine during the remainder of the day, but did not know or observe that the new blade extended farther than the other blades toward the outer part of the machine. On the following morning, the plaintiff endeavored to clean the machine while it was in motion with a steel chisel. He inserted the chisel with his right hand in the upper portion of the machine, and during the revolution of the blades his hand was caught and mangled so that two of his fingers were permanently injured.

There was a conflict in the testimony as to the cause of the injury. Upon the part of the plaintiff, the testimony tended to prove that, by reason of the new blade being negligently fastened to the shaft in such manner that it extended nearer to the outer portion of the machine than the other blades, his hand was thereby caught as the blade revolved. On the contrary, the testimony upon the part of the defendants tended to prove that the plaintiff was wearing a glove with a cuff attached, which was caught by the blade as plaintiff inserted his hand in the machine, and that this caused the injury. We are of the opinion that there was sufficient testimony adduced upon either side from which the jury might have been warranted in finding that the injury was due to either of these causes.

There are a number of errors assigned by counsel for the plaintiff why the judgment should be reversed, but we deem it only necessary for a proper determination of this appeal to notice certain of the instructions given which we think were so erroneous as to require a reversal.

The court at the request of defendants gave several instructions by which it charged the jury in effect that the plaintiff could not recover, even though he was injured by reason of the negligence of the defendants in furnishing a defective machine with which to work, if by the exercise of ordinary care he could have discovered the defect therein. One of these instructions was as follows:

"9. The law presumes that the laborer will use ordinary care to protect himself from receiving injury while at work; and although you may believe that defendants failed to place the blade in the machine in the proper manner, still, if you find from a preponderance of the evidence that the plaintiff by ordi-

nary care could have discovered that the blade was not properly placed, and thereby have protected himself from injury, your verdict will be for the defendants."

The proposition presented by these instructions is whether or not the servant is required to make an inspection in order to discover defects in the tools or appliances furnished him by the master with which to work.

It is well settled that it is the duty of the master to exercise ordinary care to provide his servants with reasonably safe appliances and tools with which to work. This duty includes the one of making reasonable inspection to see that the appliances and tools thus furnished are safe. It therefore becomes the duty of the master to exercise ordinary care in discovering the defects in the appliances and tools that are furnished to the servant and in repairing them; and if he fails to perform this duty, then he is guilty of negligence, whereby, for a consequent injury therefrom, he may be liable. The servant is not ordinarily charged with the duty of inspecting the tools and appliances which are furnished him by the master in order to discover any defects or dangers therein that are latent. When a servant enters into the employment of any one, he assumes the ordinary risks and hazards which are incident to the service, and this includes all those defects and dangers which are obvious and patent. He assumes all the risks which he knows to exist and all those which are open and obvious. *St. Louis, I. M. & S. Ry. Co.* v. *Rice,* 51 Ark. 467; *St. Louis, I. M. & S. Ry. Co.* v. *Brown,* 67 Ark. 295; *Choctaw, O. & G. Rd. Co.* v. *Jones,* 77 Ark. 367; *Bryant Lumber Co.* v. *Stastney,* 87 Ark. 321; *St. Louis, I. M. & S. Ry. Co.* v. *Holmes,* 88 Ark. 181; *Ozan Lumber Co.* v. *Bryant,* 90 Ark. 223.

But it is also well settled that a servant does not, when he enters the service of a master, or while he continues in that service, assume the risk of any dangers that arise from the negligence of the master unless he is actually aware of that negligence and appreciates the dangers arising therefrom. He has a right to rely upon the assumption that the master has performed his duty in exercising ordinary care to furnish him a safe tool or appliance with which to work, in the absence of any knowledge upon his part to the contrary. *St. Louis, I. M. & S. Ry. Co.* v. *Tuohey,*

67 Ark. 209; *Ozan Lumber Co.* v. *Bryant, supra; St. Louis, I. M. & S. Ry. Co.* v. *Birch,* 89 Ark. 427; *St. Louis, I. M. & S. Ry. Co.* v. *Holman,* 90 Ark. 555; *St. Louis, I. M. & S. Ry. Co.* v. *Corman,* 92 Ark. 102; Labatt on Master & Servant, 279. He has a right to rely upon the assumption that the master has inspected the tools and appliances furnished him, and that, if there were any defects therein, the same have been properly repaired. The servant is not required to inspect such tools and appliances in order to discover latent defects. So far as his rights and duties are concerned, the question is not whether he exercised care to discover the defects, but rather as to whether the defects and dangers were known to him, or were so obvious or patent that they were or should have been seen by him. 26 Cyc. 1231; *Texas & P. Ry. Co.* v. *Swearingen,* 196 U. S. 51; *Mt. Nebo Anthracite Coal Co.* v. *Williamson,* 73 Ark. 530; *Ozan Lumber Co.* v. *Bryant, supra; Little Rock, M. R. & T. Ry. Co.* v. *Leverett,* 48 Ark. 333; *St. Louis, I. M. & S. Ry. Co.* v. *Rogers,* 93 Ark. 564.

If the defect in the appliance or tool was not open and patent, so as to be observable, but was a hidden and latent defect, then the servant would not assume any risk arising therefrom, nor would there rest upon him any duty to inspect such tool or appliance for such hidden defect. He therefore would not be guilty of contributory negligence by reason of a failure to exercise ordinary care to discover such hidden defect. Otherwise, the rule that the master must exercise ordinary care to discover such defects and repair them would be abrogated. If the master is only obligated to exercise ordinary care in discovering latent defects, and if the servant must also exercise the same degree of care in discovering the same defects or otherwise be precluded from a recovery, then his case would always be hopeless, although he was injured by such hidden defect. For if, by the exercise of ordinary care, the servant could not discover the latent defect, then the master could not have discovered it by the exercise of like care, and would therefore be free from negligence. If, on the other hand, the defect could have been discovered by the exercise of ordinary care, and the servant would be guilty of contributory negligence in failing to exercise that care, then he would be precluded from a recovery, notwithstanding the failure of the master to exercise the same care; because it is a well

settled principle that a servant guilty of contributory negligence can not recover, although the master was also guilty of negligence. The servant has a right to rely upon the performance by the master of the duty imposed upon him to exercise ordinary care in furnishing him with safe tools and appliances, unless the defect and the danger arising therefrom is actually known to the servant, or is so open, obvious and imminent that an ordinarily prudent person would not continue in the work. Unless the defect and danger arising therefrom is known to the servant, or is so obvious and patent that no prudent man would continue the work, the servant can not be precluded from a recovery for an injury growing out of such defect in the tools or appliances furnished him, due to the master's negligence. He can not be defeated of a recovery under such circumstances on the ground of assumed risk, because he assumes no risk growing out of the negligence of the master of which he has no notice or knowledge. He can not be barred under such circumstances by the imputation of contributory negligence by reason of the failure to discover the defect which is not obvious and patent, because the duty of inspection for such defects is not imposed upon him, but upon the master. The standard for determining whether or not the plaintiff was guilty of contributory negligence in failing to discover the defect, if any, in the machine, and in working therewith, is whether such defect was open and patent and so obviously dangerous that an ordinarily prudent person would not have worked with it.

The court therefore erred in giving the above-quoted instruction and all instructions of a like nature.

The court also gave several instructions which in effect told the jury that in event there were two methods of cleaning the machine, and plaintiff adopted the one which was the less safe, when by using the other he probably would not have been injured, he could not recover. One of these instructions was as follows:

"22. I charge you that if the plaintiff, Asher, had the choice of two methods of cleaning the cement mixer in this case, the one while the machine was in action, the other while the machine was at rest, and that he chose to clean it while it was in motion, and that this was the more dangerous way of the two, and that he was injured thereby, whereas, if he had

chosen the safer way, he would probably have escaped injury, then his voluntary act in taking the more dangerous course would relieve the defendants from all liability for such injury, and your verdict will be for the defendants, but you must believe that the plaintiff had been instructed as to the two methods of cleaning the machine."

The principle enunciated by these instructions has been advanced and followed by some jurisdictions, but this court has steadily declined to adopt this rule. In the case of *Headrick* v. *Williams Cooperage Co.*, 97 Ark. 553, this court said:

"Even though there may be two ways possibly open to the employee in which to perform his work, one of which turns out to be less dangerous than the other, and he adopted the other way, yet, if that way is not so dangerous that a person of ordinary prudence would not have undertaken it, the court should not say that the employee was guilty of negligence because he chose that way which was reasonably safe, but which was not the safer." *Choctaw, O. & G. Rd. Co.* v. *Thompson*, 82 Ark. 11; *Kansas City S. R. Co.* v. *Henrie*, 87 Ark. 443.

If either of two methods might be reasonably safe in performing a task in the course of a servant's employment, then it can not be said as a matter of law that the servant is guilty of negligence precluding him from a recovery because he followed the method which proved to be the more dangerous. Under such circumstances, it becomes a question for the jury to determine whether the servant was guilty of negligence in pursuing the method adopted by him, although it turned out to be the more dangerous; and he would not be guilty of such negligence if the method so adopted by him was not so dangerous that a person of ordinary prudence would not have pursued it.

The above assignments of error are the ones which are pressed upon our attention; the other assignments of error made in the motion for new trial we do not deem it necessary to note, because upon another trial we do not think they will arise if the instructions are conformed to the principles herein announced.

For the errors indicated, the judgment is reversed, and the cause remanded for a new trial.