KENNEDY *v.* GRIFFIN.

4-4891

Opinion delivered January 17, 1938.

*W. K. Ruddell, Dene H. Coleman* and *Donham & Fulk,* for appellant.

*S. M. Casey* and *Shields M. Goodwin,* for appellee.

HUMPHREYS, J. This suit was brought by appellee against appellant in the circuit court of Independence county to recover damages in the sum of $7,500 as sole heir at law of her son, J. H. Griffin, for being deprived of his support through the carelessness and negligence of appellant, his employer, for causing his death in furnishing him a truck to haul dirt in the construction of ap-

proaches to the Miller Creek bridge near Batesville, the girder on which truck had been broken and thereafter welded in an unsafe and insecure manner. Appellee also alleged in her complaint that she was duly appointed administratrix of her son's estate, and as administratrix of his estate was entitled to recover $7,500 for the pain and suffering endured by her son after being fatally injured through the aforesaid carelessness and negligence of appellant.

Appellant filed an answer denying that J. H. Griffin was injured and killed through his negligence, and interposed the further defenses of contributory negligence on the part of deceased that his injury and death was accidental and that at the time of his injury and death he was working for an independent contractor and not for appellant.

All the defenses interposed by appellant were abandoned in the course of the trial except the defense that deceased was not killed through the carelessness and negligence of appellant in furnishing him with a truck to haul dirt, the girder of which had been welded in an unsafe and insecure manner.

The cause was submitted to the jury upon the evidence adduced by appellee responsive to the issue of alleged carelessness and negligence on the part of appellant causing the injury and death of deceased, and the instructions of the court, resulting in a verdict and consequent judgment in the total sum of $6,333 for appellee, $2,111 of the amount being for herself as sole heir of J. H. Griffin, deceased, and $4,222 of the amount for the benefit of the estate of said J. H. Griffin on account of pain and suffering, from which is this appeal.

At the conclusion of the evidence appellant moved the court to instruct a verdict for him on the ground that the evidence showed no negligence on his part causing the injury and death of deceased.

Mrs. Lillie A. Griffin testified, in substance, that she was the mother of J. H. Griffin; that he was twenty years old, lived at home and contributed to the support of the family, consisting of herself and his three sisters, and, in addition to working out at any job he could get, did the

work around home, such as farming, getting in wood, etc.; that he had finished high school and had completed one semester in Arkansas College at Batesville; that at the time he was killed he was employed by appellant as a truck driver at the over-pass near the Miller Creek bridge in constructing approaches to the bridge; that when killed he was driving one of appellant's trucks on the job; that he was a bright, industrious young man, and when not at work stayed most of the time at home.

James Mitchum testified, in substance, that at the time J. H. Griffin was killed he was working for appellant, A. C. Kennedy, in the capacity of dump foreman on the approaches to said bridge, his duties being to spot the trucks as they came in with loads of dirt and show the drivers where to dump the load on the fill; that when J. H. Griffin was hauling he showed him where to dump the dirt; that he noticed the truck which J. H. Griffin was driving had mashed down about a hundred yards from him; that he ran down there and found several more men trying to pull the bed off of Griffin; that they were unable to pull it off and got a chain which they hooked to the back of the truck so as to pull the bed back from him; that he dragged him out from between the truck and the steering wheel where it had him bound and that when they got him out he was dead; that when he first reached the truck he held the head and felt the pulse of Griffin and found that he was still breathing and continued to breathe for quite a little while; that the truck was down in a little depression or hole and apparently threw the load over to the right side of the truck and caused the load to drop down; that the truck was in a strained or kind of leaning position; that the truck would have possibly broken down if it had been on level ground.

Claude Stebbins testified, in substance, that he was working on the over-pass for Mr. Kennedy in the capacity of dump foreman, when Griffin was killed, his duties being to show the truck drivers where to dump the dirt on the approaches; that he was within six feet of Griffin when the truck broke in two and killed him; that Griffin hallooed, "get it off of me," at which time his head fell over on the front of the truck; that Griffin continued to live

for about fifteen minutes, or until about the time they pulled the truck off of him; that witness is still working for Mr. Kennedy; that when he went to the truck, the wheel was in a little depression and it looked as if the load had shifted a little on that account, but they haul all over there all the time; that while the depression caused the load to shift, yet the truck might have broken in two had it been on level ground; that in delivering the dirt the car drivers had to go all along that ground and over all kinds of ground; that the depressions there were the kind of depressions that were on all kinds of construction work.

Ed Shelton testified, in substance, that he was a mechanic and welder with about fifteen years experience; that the following morning after J. H. Griffin was killed he went out and looked at the truck and found that the girder was broken where it had been theretofore welded. On direct examination he was asked the following questions:

"Q. Was the girder properly welded? A. Well, I don't think so. No, sir. Q. Was it welded in such manner that it was suitable to carry loads of dirt? A. No, sir."

In the subsequent examination he expressed the opinion that electric welding was better than acetylene welding and stated that both kinds of welding were used in repairing broken rods or machinery.

Under the evidence detailed above the jury was warranted in finding that J. H. Griffin was employed by appellant to haul dirt and dump it under the direction of appellant's foreman in constructing approaches to Miller Creek bridge, in a truck furnished him by appellant that was unsafe in which to haul dirt on account of a defectively welded girder which broke in the weld and threw the back part of the truck on to Griffin, injuring him, which injury resulted in his death in a few minutes after the girder broke; that the girder broke on account of being insecurely welded, and not because Griffin had driven it into a slight depression or hole.

Appellant argues that the testimony is insufficient to show that Griffin was employed by Kennedy at the

time he was injured or that appellant furnished him the truck he was driving or that he was injured in the course of his employment, or that the girder had been insecurely welded, or that a proper and sufficient inspection of the truck had not been made before it was delivered to Griffin for use. We do not think there is any merit in any of these contentions. According to the evidence of Mrs. Griffin, her son had been employed by Kennedy and that the foremen, Mitchum and Stebbins, were employed by Kennedy to direct Griffin and the other truck drivers where to deposit the dirt in the construction of the approaches. There seems to be no dispute in the evidence that deceased was hauling a load of dirt for the purpose of depositing it on the approaches at the time he was injured and killed. The only mechanic who testified in the case testified that the girder was not properly welded and not welded in such a manner that it was suitable to carry loads of dirt. It is also argued that the slight depression or hole might have caused the injury when the truck was driven over or in to it, but this argument seems far-fetched to us, as there were depressions and holes all over the approaches which trucks were expected to travel over. We cannot agree with appellant that there is no substantial evidence in the record tending to show negligence on the part of Kennedy, and for that reason the court properly refused to peremptorily instruct a verdict for him.

The law applicable to cases of this character is that the master must exercise ordinary care to provide his servants with reasonably safe appliances and tools with which to work. The duty also rests upon the master to make reasonable inspection to see that the appliances and tools furnished are safe. A servant only assumes risks which he knows exist and those which are open and obvious. *Asher* v. *Byrnes,* 101 Ark. 197, 141 S. W. 1176; *Gaster* v. *Hicks,* 181 Ark. 299, 25 S. W. 2d 760; *Burden* v. *Hughes,* 186 Ark. 707, 55 S. W. 2d 502.

Under the rule of law thus announced the jury were properly instructed and more favorably for appellant than the facts warranted.

. Appellant contends for a reversal of the judgment because the verdict was arrived at by lot, and in support of this conclusion an affidavit of W. K. Ruddell, one of appellant's attorneys, was presented to the court with attached calculations which he said must have been used by the jury in arriving at the verdict as he found them in the room when the jury came out. The attached calculations showed that various amounts were put down by each of the jurors and the total divided by twelve, the result being $6,333, and that this amount was divided one-third and two-thirds, reaching the result of a verdict for $2,111 for appellant in her own behalf and $4,222 for the estate on account of pain and suffering. Even if these calculations be accepted as made by the jury, it would only tend to show a quotient verdict instead of a verdict by lot. This court said in the case of *Speer* v. *State,* 130 Ark. 457, 198 S. W. 113, that: "Lot involves an element of chance. The quotient verdict is not a result of lottery. It is a certain result ascertained by adding twelve separate amounts together and dividing the sum by twelve. Only one result can be reached. It would be a lottery if twelve different amounts were placed on separate slips of paper and one slip then drawn out, which, by agreement, should become the verdict."

This court has also said that quotient verdicts may not be impeached by the evidence of a juror. *Coca-Cola Bottling Co.* v. *Davidson,* 193 Ark. 825, 102 S. W. 2d 833.

Appellant also contends that the verdicts are excessive. We do not find anything in the evidence tending to show that the verdict in favor of appellee as the sole heir of the estate of J. H. Griffin was excessive. The following stipulation appears in the record:

"It is stipulated by the parties that J. H. Griffin, deceased, was 20 years of age at the time of his death, and that his expectancy of life was 42 years additional; and that Lillie A. Griffin, administratrix, was 52 years of age at the time of the death of J. H. Griffin, her son, and that her expectancy of life was 19 additional years."

. The evidence reflects that the young man earned about $25 a month when working and that he contributed most of his earnings to his mother and toward the sup-

port of the family, and that in addition he did the chores about home, such as getting in wood, gardening, etc. In view of the expectancy of the deceased and that of his mother and the contributions in money and labor to his mother, we are unable to say that the amount of $2,111 for her is excessive.

The deceased was conscious after being injured for several minutes, as evidenced by the fact that he asked those who had gathered around the truck to remove it. There can be no question that he was very seriously injured, almost unto death, and suffered great pain during the few minutes he lived. He did not die for about fifteen minutes. He said nothing which indicated that perhaps he was conscious after he made the request for them to remove the truck off his body. In view of the fact that the deceased lived only a few minutes, we think $4,222 was an excessive award to his estate, but that $2,500 would have been an ample award for the pain and suffering endured by him. If appellee will enter a remittitur to $2,500 within fifteen days from this date as to the judgment in favor of the estate, the judgment will be affirmed; otherwise, it will be reversed and remanded for a new trial.