ARK. STATE HIGHWAY COMM. *v.* CARDER.

5-1343                                          305 S. W. 2d 330

Opinion delivered September 30, 1957.

*W. R. Thrasher, Neill Bohlinger, Dowell Anders* and *Bill Demmer,* for appellant.

*Catlett & Henderson,* for appellee.

Minor W. Millwee, Associate Justice. On December 28, 1955, the appellant, Arkansas State Highway Commission, filed suit condemning 5.44 acres of land out of a 14.44-acre tract owned by appellees, Frank G. Carder and Frank G. Carder Jr., in Jacksonville, Arkansas. These lands along with others were condemned for the reconstruction and relocation of that part of U. S. Highway 67 in Pulaski County known as the North Little Rock — Jacksonville — Air Force Base Highway. A "Declaration of Taking" was filed January 16, 1956 for the "controlled-access" road. The issue of the amount of damages sustained by appellees for the taking of their lands was tried to a jury on December 11, 1956, resulting in a verdict and judgment for $31,500.

Appellant first contends the verdict is excessive in that there is no substantial evidence to support it because there is no fair or reasonable basis for the estimates and opinions of the witnesses for appellees concerning the amount of their damages. While the question of the sufficiency of the evidence is one of the law, it is also settled that in making such determination this court must consider the testimony in the light most favorable to appellees and indulge all reasonable inferences in favor of the judgment.

The evidence discloses that 6.95 acres of the tract owned by appellees is zoned for commercial use from which portion appellant took 4.32 acres. The remaining 7.49 acres is zoned for residential use and 1.12 acres were taken from this portion. The land taken will be used in the construction of an overpass and dump varying in height up to 15 feet and 3 inches and extending across the entire tract with a width or frontage of 449 feet along Main Street in the City of Jacksonville at the place of beginning and a width of 240 feet on the Northeast or point of leaving appellees' property. After the taking of the 5.44 acres there remains an irregular shaped parcel of 1.17 acres zoned for com-

mercial use on the East and 7.83 acres on the West of which 6.37 acres is residential and 1.46 acres is commercial. A strip of about 2 acres on the West is burdened by a power line easement. While there was some evidence of plans for interchange or service roads along the limited access highway by appellees' property, final approval of such plans had not been made at the time of trial.

Three real estate expert witnesses for appellees shown to be well qualified by background and experience estimated appellees damages in amounts varying from $43,000 to $71,500. Such estimates included the market value of the lands taken and damages to the remaining lands by reason of the taking and construction. These witnesses were of the opinion that said lands were strategically located for business use as a shopping area for the inhabitants of the rapidly growing City of Jacksonville and the Little Rock Air Force Base. Instances of sales of lands in another commercial area of the city which the witnesses regarded as comparable in value to the lands in question were given along with other factors bearing on market value.

The foregoing testimony was sharply disputed by the three experts presented by the appellant who estimated appellees' total damages at $6,400 to $7,102. While admitting it was valuable as commercial property, they denied that the lands were suitable for shopping center development and did not regard it as comparable in value to land in a nearby shopping center area which sold for considerably more than was allowed appellees in the instant case. In support of their estimates they cited sales of other properties during the last 2 or 3 years which they considered more nearly comparable in value to appellees' lands. It was admitted that there has been a sharp increase in land values generally in the area during the past three years on account of the construction of the Little Rock Air Force Base.

In condemnation proceedings like this we have repeatedly held that the owner may be allowed to show

every advantage that his property possesses, present and prospective, in order that the jury may satisfactorily determine what price it could be sold for on the market. *Kansas City Southern Ry. Co.* v. *Boles,* 88 Ark. 533, 115 S. W. 375. The credibility of the various witnesses who testified concerning the damages sustained by appellees was a matter for the determination of the jury, and it furnishes no ground for reversal that the verdict might appear to us to be contrary to the preponderance of the evidence. *State Highway Commission* v. *Jelks,* 203 Ark. 878, 159 S. W. 2d 465. Also in cases of this kind the jurors are accorded great latitude in considering testimony as to damages and their verdict will be set aside as excessive only when it is not supported by proof, or when it is so excessive as to indicate passion, prejudice or an incorrect appreciation of the law applicable to the case. *Texas & St. Louis Ry. Co.* v. *Eddy,* 42 Ark. 527. Tested by this rule, the amount awarded in this case is certainly liberal but we cannot say the verdict is unsupported by substantial evidence or that it is so excessive as to call for a reversal or modification of the judgment.

The only other contention for reversal is that the trial court abused its discretion in refusing to allow the jury to view the lands in question. When appellant renewed its motion that the jury be permitted to view the property at the conclusion of all the testimony, and after counsel for appellees stated his reasons for believing that no useful purpose would be served thereby, the trial court ruled as follows:

"THE COURT: As explained to you gentlemen last evening, the usual policy of the Court, the customary rule followed is to inquire of the jury as to whether or not they would like to go and view the property and in this case I am going to ask the jury if they feel that a view of the property would add to the information which has been supplied to the members of the jury as to whether or not they would like to go and view the property. Let's see a raising of the hands of the jury who feel that it is not necessary for them or who feel that they do not care to go and view the property.

(A unanimous showing of hands was indicated by the jury.) Gentlemen, it seems to the Court the great number of exhibits here, we have pictures of the property, I think a pretty clear picture of the situation out there has been presented, the type of lands and its location and all has been given the jury and jury has indicated that it feels that it does not care to view the lands, so the motion will be denied and you may note your exceptions.''

While it is conceded that it was within the trial court's discretion to allow a jury view of the property under out statute[1], appellant argues that the court failed to comply with it and allowed the jurors to determine for themselves whether they should view the lands. It is true that the exercise of the authority or power to allow a jury view rests in the judgment and discretion of the court and not the jury under the statute. *Bridgman* v. *Baxter County,* 202 Ark. 15, 148 S. W. 2d 673. A view is not a matter of right, but rests in the sound discretion of the trial judge as to whether it is proper to enable the jury to obtain a clearer understanding of the issues or make a proper application of the evidence. When the court's ruling on the question is considered in connection with the numerous maps, plats, photographs and other descriptive items of evidence adduced, we cannot agree that the court abdicated its power and authority or abused its discretion in refusing the jury view of the property.

Affirmed.

---

[1] Ark. Stats., Sec. 27-1731, reads: "Whenever, in the opinion of the court, it is proper for the jury to have a view of real property which is the subject of litigation, or of the place in which any material fact occurred, it may order them to be conducted in a body, under the charge of an officer, to the place, which shall be shown to them by some person appointed by the court for that purpose. While the jury are thus absent, no person other than the person so appointed shall speak to them on any subject connected with the trial."