ARK. STATE HIGHWAY COMM. *v.* MUSWICK CIGAR &
BEVERAGE CO.

5-2031                                    329 S. W. 2d 173

Opinion delivered November 23, 1959.

*Dowell Anders* and *William H. Donham,* for appellant.

*Catlett & Henderson,* for appellee.

PAUL WARD, Associate Justice. This is an eminent domain action brought by the State Highway Commission (hereafter called the "State") against the Muswick Beverage Company, Inc. (hereafter called the "Company") for the acquisition of the entire parcel of land and improvements thereon belonging to the Company. The jury rendered a verdict fixing the value at $212,000.00 and judgment was accordingly entered in that amount plus interest on the excess (over the court deposit of $149,300.00) from the date of the Declaration of Taking which was March 31, 1959.

On appeal to this court the State contends (a) that the judgment in its full amount is not supported by substantial evidence and (b) that interest should begin running from October 31, 1959, this being the date on which the court ordered the Company to vacate.

(a) From the record in this case we can find no satisfactory reason for holding that the full judgment is not supported by substantial evidence. Mr. Henry Hoffman, President and General Manager of the Company, and three other witnesses testified on behalf of appellee relative to the value of the land while two witnesses so testified on behalf of the State. The values fixed by appellee's witnesses were respectively $250,000.00; $200,345.00; $200,000.00; and $210,000.00. The values fixed by the appellant's witnesses were respectively $151,700.00 and $165.000.00. The testimony of the above named witnesses was substantially as hereafter set out.

*Hoffman:* I am the President, General Manager, Director, and the largest stockholder of the Company which is located six blocks east of Main Street on Third Street between Ferry and Rector Streets; the Company sells at wholesale cigars, cigarettes, tobacco, candy, beer and vending machines of candy and cigarettes, operating 31 pieces of automatic equipment; there are 32,002.5 square feet in the entire property which consists of six lots; the buildings cover 12,000 square feet, the covered loading dock approximately 6,000 square feet, and

a gravel driveway approximately 6,000 square feet; the property is served by a Rock Island siding running the entire length of the building on the Third Street side; the General Offices which face Rector Street cover around 16,000 square feet and they are modern, air conditioned and equipped with fluorescent lights and rubber tile floors; directly behind the offices is a merchandise warehouse with rubber tile floor which contains cigars, candies, heating and air conditioning units and rest rooms and in the merchandising area are located two storage rooms, one of which must be kept at a certain temperature; there is also a beer warehouse containing 2,945 square feet, behind which is a two-story vending machine operation. The place is strategically located and is the best location in town for the type of business we operate, it has been in operation at this same location since 1921 and I have been with the Company for 36 years; we serve a trade territory of which our property is the center, this territory includes North Little Rock; the place is only five blocks from the Depot which makes it convenient for our employees; and, it is in the central fire district and has good police protection. I have walked every railroad track in town looking for another location since learning that our property was to be taken by the State, and there just isn't any location with rail service available in our price limit. I am acquainted with the value of property in that vicinity, and the value of this land with the improvements is $250,000.00 or a little more.

*James H. Larrison,* who has been in the real estate business 13 or 14 years and is connected with the Walthour-Flake Company and has had much experience in buying, selling and appraising real estate for a large number of years, stated that he was acquainted with the subject property and that he made an examination of it recently. It was his considered opinion that the subject property would have sold for $200,345.00 on the 31st day of March 1959. In making up his mind as to the value of the property he took into consideration the nature of the business, what the land and buildings were

worth, and the street pattern around the property, and the location of the railroad facilities. On cross-examination he stated that he contacted many of the property owners in that immediate area and found no property for sale at less than $3.00 a square foot with improvements or unimproved. Later, on cross-examination, he stated that he had found some property, though not comparable to the Company's property in respect to location and surrounding facilities, which had sold for a lower price than $3.00 a square foot. After going into a detailed explanation of the value of the improvements the witness estimated the value of the land at $95,993.00 and the improvements at $104,352.00.

*Frank Fulk,* who lives in Little Rock and has been engaged in the real estate business for approximately 30 years testified that he was acquainted with the subject property and had made a detailed examination of the property recently. In his opinion the subject property was worth $200,000.00 on March 31, 1959. On cross-examination he explained in some detail as to how he arrived at the above figure.

*C. V. Barnes,* who has lived in Little Rock all of his life and operates a real estate firm stated that he was acquainted with the subject property and that in his opinion its fair market value on March 31, 1959, was $210,000.00. He explained that he had arrived at this figure by considering the three common approaches to value: sale, the income it would produce if the property were rented, and from a replacement cost approach. On cross-examination he stated that he was chairman of the Equalization Board and was familiar with the fact that the market value and the assessed value of property are not always the same.

On behalf of the State the following testimony in substance was given by Warren Baldwin and James M. East. Baldwin lives in Little Rock and has been engaged in the real estate business since 1913. He was employed by the State to appraise the subject property which he did by using the reconstruction less deprecia-

tion method. In 1957 he appraised the property at $145,000.00 but revised that estimate as of March 31, 1959, valuing the property at $151,700.00. He figured the land at $1.75 a square foot which, he thought, was the highest valuation of any land in that area at that time. He appraised the improvements at $93,081.00 and the land at $58,619.00. On cross-examination he stated that his business consisted principally of appraising and renting property but not selling property. He also admitted that it is difficult to find a location the size of the subject property in that area. Mr. East, who has been a real estate appraiser for 13 years all over Arkansas and who at sometimes represented practically all life insurance companies making loans in this state and who has also represented the F.H.A. and the V.A. made an appraisal of the subject for the State. He stated that he had made a thorough study of the area in question for 14 months and originally appraised the land alone at $1.75 a square foot but later raised it to $2.00 a square foot, making the total value of the subject land $64,000.00. In his opinion the land and the improvements had a market value of $165,000.00 as of March 31, 1959.

In support of the State's contention that there was no substantial evidence to support the verdict of the jury we assume that it is meant there is no substantial evidence to support the verdict and judgment in its entirety. In this connection appellant points out, and we agree, that the question of whether there is any substantial evidence is one of law and not of fact. See *Missouri Pacific Transportation Company* v. *Bell,* 197 Ark. 250, 122 S. W. 2d 958, and *Arkansas State Highway Commission* v. *Byars,* 221 Ark. 845, 256 S. W. 2d 738. On the other hand, appellee calls our attention to certain rules well established by the decisions of this court, which we must apply in considering a question of this nature. One such rule is that the jurors are accorded great latitude in considering testimony relative to damages. See *Arkansas State Highway Commission* v. *Carder,* 228 Ark. 8, 305 S. W. 2d 330. Another rule is that on appeal in determining the sufficiency of the evi-

dence, we will consider the evidence in the light most favorable to appellee. See *Mutual Benefit Health and Accident Association* v. *Basham,* 191 Ark. 679, 87 S. W. 2d 583. This court recognizes that a question of this nature constitutes one of the most difficult problems with which the court is confronted on appeal. We also recognized another general rule which is applicable here in the *Carder* case, *supra,* where it was stated that a jury's verdict ". . . will be set aside as excessive only when it is not supported by proof, or when it is so excessive as to indicate passion, prejudice or incorrect appreciation of the law applicable to the case". We find nothing in the record before us to indicate passion or prejudice.

If we have a right to consider the testimony of all of the witnesses, including Mr. Hoffman, relative to the value of such property we are not satisfied to say that there is no substantial evidence to support the jury's verdict in its entirety. Our decision might be other wise if, as appellant strenuously contends, we should not place any value upon Hoffman's testimony. It was pointed out by appellant that Hoffman is an interested party to the outcome of this litigation and, further, that he did not testify to any particular fact within his personal knowledge but only as to his personal conclusions. We are unable to agree with this contention on the part of appellant. We think that the circumstance of Mr. Hoffman's personal interest was something which went only to the weight his testimony should have with the jury. On this point the State was fully protected by the court by its instruction to the jury to disregard biased-opinion testimony in arriving at their verdict. We know of no rule, and none has been pointed out to us by appellant, which denies the right of an interested party in a lawsuit to give his testimony for what it is worth. Nor do we agree with appellant's statement that Hoffman testified to no facts within his personal knowledge. As heretofore set out, he testified to many facts which have a direct bearing on the value of the subject property, and he also stated that he was acquainted with prop-

erty values in that vicinity. On all these items he was, of course, subject to cross-examination.

This court has on numerous occasions affirmed the right of the owner of property (and it is pointed out that Hoffman was not the sole owner of subject property) to testify as to its value. In the case of *Jonesboro, Lake City & Eastern Railroad Company* v. *Ashabranner,* 117 Ark. 317, 174 S. W. 548, we find this statement: "Plaintiff resided on the land and was familiar with the conditions, and we think the court was justified in allowing her to state her opinion of the extent of the injury to the land and the depreciation in the value thereof". For decisions to the same effect see *Carder, supra; Stuttgart & Rice Belt R. R. Co.* v. *Kocourek,* 101 Ark. 47, 141 S. W. 511; and *Arkansas State Highway Commission* v. *O. & B., Inc.,* 227 Ark. 739, 103 S. W. 2d 739. This same rule appears to be generally accepted in other jurisdictions. See *Provo River Water Users Assn.* v. *Carlson,* 103 Utah 93, 103 P. 2d 777 and *Telluride Power Co.* v. *Williams,* 164 F2d 685. The jurors must have recognized the well known fact that property appraisement is not an exact science. They certainly noticed that even the State's own witnesses were not in agreement to the extent of over $13,000.00. They also had a right to believe Hoffman knew more about the value of the location and serviceable features of the property than any of the other witnesses. It is our conclusion, therefore, that the judgment of the trial court in the full amount of $212,000.00 must be affirmed.

(b) On March 31, 1959, when the State filed its complaint in this matter, it deposited the sum of $149,-300.00 and affirmed its declaration to take all of the property belonging to appellee. It appears that the deposit has been paid to appellee and that the court ordered interest on the balance of $62,700.00 to start running as of the above date.

The record further shows that on May 21, 1959, the State filed a petition for the right of entry on and possession of subject property by October 15, 1959, and on

June 12, 1959 an order was entered by the trial court granting appellee possession as of October 31, 1959, ordering appellee to vacate the property by that date. The relative statutes in this case are Ark. Stats. Section 76-532, *et. seq.* Section 76-538 provides for the State to file a declaration of taking and to make a deposit with the Clerk of the estimated compensation; that the State shall thereupon have the right of entry and the parties in possession shall be required to render the possession to the State *upon such terms as shall be fixed by the court.* Section 76-536 provides that immediately upon the making of the deposit provided for in the above section, title to the lands shall vest in the State and that compensation for the land shall be ascertained and established by judgment. That section further provides that ". . . said judgment shall include as a part of the just compensation awarded interest at the rate of six per cent (6%) per annum on the amount finally awarded as the value of the property *from the date of surrender of possession to the date of payment . . .*" (Emphasis supplied).

Upon oral argument it was agreed by both sides that interest should not begin to run until October 31, 1959 — the date when possession was surrendered, and, therefore, the judgment of the trial court should be modified to so read. This modification should not, and will not, result in taxing any part of the costs against appellee since appellant, with commendable candor, assumed full responsibility for writing the precedent for judgment which contained the error in dates.

Accordingly the judgment of the trial court is modified as above indicated and, as modified, it is affirmed.

Modified and affirmed.