ARK. STATE HIGHWAY COMM. *v.* KENNEDY.

5-2357                                    350 S. W. 2d 526

Opinion delivered October 30, 1961.

*Dowell Anders* and *Thomas B. Keys,* for appellant.

*Kaneaster Hodges,* for appellee.

JIM JOHNSON, Associate Justice. This is an eminent domain action. Appellant, Arkansas State Highway Commission, brought suit to acquire an easement across land owned by Mrs. S. E. (Eliza) Kennedy, appellee. This land was part of a larger tract of 2.6 acres upon which Mrs. Kennedy's residence was located. Appellant deposited $650 as estimated just compensation for the tract taken. Appellee claimed severance damages to the entire property. The jury returned a verdict in the amount of $2,500 for Mrs. Kennedy.

For reversal, appellant relies upon the following points:

1. The trial court committed reversible error in not striking all the testimony of O. E. Guinn.

2. The trial court committed reversible error in permitting the landowner's attorney to tell the jury that they could in effect return a quotient verdict.

3. The trial court committed reversible error in not granting appellant's motion for new trial based upon the ground that there was no substantial evidence to support the verdict of the jury.

### STRIKING TESTIMONY

The testimony of O. E. Guinn which appellant complains of was obtained by it on *cross examination* and is as follows:

"A. Let me answer your question in this way. I had no previous knowledge of any land selling there and Mr. East came in my office and asked if I knew of any land being sold or had been sold there and I told him I did not, that Mr. Hinkle handled most of the land in that area, that I had no knowledge, that he could talk to Mr.

Pratt. I didn't arrive at any figure while I was at Mr. Kennedy's house. I did check into some land that had been taken by the Highway Department and that definitely did enter into my figure.

"Q. In other words, the figure that you got from checking what the Highway Department had paid for lands taken entered into your opinion as to market value of this property?

"A. No, sir. I would say the land of the property taken. I would definitely say yes."

The trial court instructed the jury as follows:

"You are instructed to disregard that portion of the testimony of the witness O. E. Guinn which was based on settlement payment by the State Highway Commission on certain property owners in this vicinity. The Court has instructed you on the proper measure of damages; and insofar as damages are concerned, that is the rule you will follow in the determinations in this case."

Notwithstanding the trial court's instruction appellant argues that it was reversible error for the court to refuse to strike all of Mr. Guinn's testimony. In support of its argument appellant cites *Yonts* v. *Public Service Company of Arkansas,* 179 Ark. 695, 17 S. W. 2d 886, wherein this Court said:

"It is next contended by appellant that the court erred in admitting testimony as to what other lands in the vicinity cost plaintiff. This testimony was not competent. This court and many others have held that it is proper to admit testimony as to the price at which other lands in the vicinity sold, together with testimony as to the similarity or dissimilarity of the lands, but that means sales in the ordinary course of business, and not sales to the service company who were seeking to condemn land for their dam and reservoir. Evidence showing what the company seeking to condemn has paid for other lands would probably be taken by the jury as indicating the market value, when, as a matter of fact, it does not

tend to show the market value of the land. A company condemning land might be willing to give more than it was worth and the owner of land might be willing to take less than it is worth, that is, less than its market value, rather than have a lawsuit. Moreover, when a company seeks to get land or condemn it for public uses, having the power to condemn, the land owner would probably come to some agreement with him rather than have a lawsuit, and this agreement would show a compromise rather than the market value of the land.

"What the party condemning has paid for other property is incompetent. Such sales are not a fair criterion of the value, for the reason that they are in the nature of a compromise. They are affected by an element which does not enter into similar transactions made in the ordinary course of business. The one party may force a sale at such a price as may be fixed by the tribunal appointed by law. In most cases the same party must have the particular property, even if it costs more than its true value. The fear of one party or the other to take the risk of legal proceedings ordinarily results in the one party paying more or the other taking less than is considered to be the fair market value of the property. For these reasons, such sales do not seem to be competent evidence of the value in any case, whether in a proceeding by the same condemning party, or other cases."

This Court has frequently said the jury is accorded great latitude in considering testimony relative to damages in such cases as here presented. *Arkansas State Highway Commission* v. *Muswick Cigar & Beverage Co.*, 231 Ark. 265, 329 S. W. 2d 173; *Arkansas State Highway Commission* v. *Speck*, 230 Ark. 712, 324 S. W. 2d 796; *City of Harrison* v. *Moss*, 213 Ark. 721, 212 S. W. 2d 334; *Arkansas State Highway Commission* v. *Jelks*, 203 Ark. 878, 159 S. W. 2d 465. Even so, under the rule in the *Yonts* case, *supra,* we would have no choice but to reverse the instant case had appellant introduced evidence as to the figures of any evaluations by the State Highway Commission or the figures for which any land was acquired by it, but such is not the case here. As stated

above, the answer by Mr. Guinn, of which complaint is made, was elicited on cross-examination; no figures were given but no doubt such figures would have been given if the cross-examiner had further pursued his line of questioning. The rule in the *Yonts* case, *supra*, is a prohibition against the introduction of certain testimony by the landowner and not a prohibition against the knowledge a witness may possess. Mr. Guinn said that he had checked the appraisals by the appellant in the area and this information was a part of his knowledge upon the subject of valuation; he candidly stated that such knowledge entered into his figure. The record reveals that Mr. Guinn's evaluation was the lowest introduced by appellee.

Mr. Guinn gave his opinion as to the value of the property before the taking, detailing the size of the tract, the location and square footage of the residence, the type of construction and the area and trees taken absolutely. He is in the real estate business at Newport, Jackson County, and has knowledge of market values in Jackson County. He was well qualified to give his opinion testimony as to the values before and after the taking. Therefore, we are impelled to the conclusion that the trial court committed no error in refusing to strike Mr. Guinn's testimony.

## QUOTIENT VERDICT

Appellant contends that the landowner's attorney told the jury that they could in effect return a quotient verdict. The record in regard to this matter is as follows:

By Condemnor's Attorney:

"In his closing argument to the jury attorney for the landowner stated to the jury that if you added the differences of the testimony of all of the landowner's witnesses you would get an average difference of a certain sum of money; that if you added the differences between the testimony of all eight witnesses you would get another average figure and that if you added the

average differences between the top witness for the landowner and the top witness for the State you would get a certain figure.

"The plaintiff objects to the attorney for the landowner being permitted to make such an argument to the jury as it tells the jury they can use an improper method in arriving at the damages sustained by the landowner, and that the failure of the court to so instruct the jury prejudiced the State of Arkansas.

"That it was agreed prior to arguments by counsel that the record might be preserved with respect to this objection."

By Landowner's Attorney:

"I would like for the record to show that counsel for the property owner has said at the same time that he stated in his argument he was not suggesting this was a proper method of arriving at a verdict but was simply pointing out the range the testimony took from the stand. I would like to point out also the blackboard used simply gave the testimony of the witnesses and did not add or average up the figures."

By The Court:

"Thereupon, the Court remarks that because of agreement that counsel for the State Highway Commission might make up his record after argument was completed rather than interrupt argument of counsel for the landowner and recalls that Mr. Hodges stated to the jury that he did not suggest that averaging the figures testified to by witnesses would be a proper measure of damages but merely that these were the result of averaging the figures testified to by these witnesses. Therefore, the Court overruled Counsel for the State."

By Landowner's Attorney:

"In closing argument counsel for the landowner added in closing argument, he pointed out the almost exact similarity of figures before the taking and that the

only question for the jury to decide was the fair market value of the land after the taking."

There was not testimony to the effect, nor was there any indication that the jury returned a quotient verdict. Therefore, we find no merit in appellant's second point urged for reversal. See: *Kennedy* v. *Griffin*, 195 Ark. 379, 112 S. W. 2d 644.

## SUBSTANTIAL EVIDENCE

This Court has repeatedly held that a jury verdict will be affirmed where there is any substantial evidence to support it. *Arkansas State Highway Commission* v. *Carder,* 228 Ark. 8, 305 S. W. 2d 330. In the case of *State Highway Commission* v. *Jelks,* 203 Ark. 878, 150 S. W. 2d 465, the Court stated the rule as follows:

". . . the rule is that where fair-minded men might differ honestly as to the conclusion to be drawn from the facts, either controverted or uncontroverted, the question should go to the jury, and it is the province of the jury to pass on the weight of the evidence and the credibility of the witnesses, and, even if it appears that the verdict is contrary to the preponderance of the testimony, this furnishes no ground for reversal. Citations."

The question presented for our consideration by appellant's third point urged for reversal is whether the evidence introduced by appellee falls within the above stated rule. Appellees' evidence is summarized as follows:

Mr. John Q. Adams has been a real estate broker and appraiser for more than forty years, was familiar with the property, inspected it in October 1959 and found that the front door was brought within forty-three feet of the highway right of way. Mr. S. E. Kennedy, husband of appellee, negotiated for purchase of the property, was a licensed real estate broker for four to five years after 1940, was a nearby landowner, recounted the front door was forty feet from a red clay sand and rock

bank, has bought and sold land in Jackson County and adjoining counties and described in detail the numerous shade trees taken and destroyed. Mr. Claude Cole owned nearby land, was familiar with the property and had made a tentative agreement to pay $8,000 for the property before he learned the highway would take the front of the property, so gave up his plan to buy, and stated the value of the remainder was $4,000, after taking of the right of way. Mr. Guinn, in the real estate business knew the market value of such property and recalled the right of way was thirty-six feet at the closest point. He opined its value was $11,500 before the taking and $8,500 thereafter, damaging Mrs. Kennedy in the sum of $3,000. Mr. James Parish, a realtor for twelve to thirteen years, was familiar with real estate values in the area and the Kennedy property, having made a detailed appraisal in October 1959. He said the diminution in the market value was $3,150. Mr. A. F. Fraser, an officer of the nearby Citizens State Bank at Bradford, had appraised the property for loan purposes and had made a loan on the house. Further, he knew real estate values in the area and had himself built a similar house on the same highway at Bradford, only a few miles distant. He believed the before value was $9,000, and after value was $6,000 and appellee had lost $3,000.

All of these six witnesses for appellee properly testified as to the before and after value of the property and had especial reasons to be familiar with the amount for which such property would sell in the area. The four realtors had bought, sold and handled the sale of such real estate in Jackson County. Mr. Fraser was a banker making loans on such property, had built such a house and had bought and sold real estate in the area. Mr. Cole had bought and sold such real estate and had, in fact, traded for this property at $8,000 before learning the highway right of way would cross it. He related that the diminished value because of that fact was $4,000. All these witnesses were peculiarly well qualified to speak upon the one subject of the jury's inquiry; that is, the price at which the remainder of the land would have

sold in the Jackson County market. The jury's answer of $2,500 was well within their testimony and substantially supported by it.

Affirmed.

BOHLINGER, J., not participating.